CHARLES BROCK, Respondent, v. RUEL W. POOR and WALTER H. BENNETT, Individually and as Trustees under an Agreement Dated November 29, 1904. THOMAS W. STEPHENS and THE ANTHONY AND SCOVILL COMPANY, Appellants.

Pleading — misjoinder — corporation — action in behalf of stockholders improperly joined with action in behalf of corporation — corporation proper party to assert right to recover misappropriated corporate assets — when corporate inactivity no basis for individual action by stockholder to redress wrong.

1. In consideration of the query whether inconsistent causes of action have been joined in a complaint it need not appear that such causes of action have been completely or perfectly alleged.

2. The allegation of a cause of action in behalf of former stockholders of a corporation to have releases set aside and their stock in a corporation restored to them is entirely independent of and cannot be united with a cause of action in behalf of the corporation to recover in its behalf and for its benefit property of which it has been unjustly and fraudulently deprived.

3. Corporate existence is not lost through mere corporate inaction or transfer of property. Unless a corporation has suffered such a complete dissolution that it must be regarded as no longer capable of holding or administering its property even for the purpose of corporate liquidation, and that it must be held that perforce of dissolution and loss of corporate existence and capacity its property and rights have passed to its stockholders as ultimate owners, the corporation is the proper party to assert the right to recover misappropriated corporate assets.

4. The ordinary rule is that fraud of the officers or managers of a corporation whereby its assets are misappropriated must be redressed by an action brought by the corporation to whom the assets belonged or by a stockholder derivatively in behalf of the corporation. The facts alleged in this action of corporate inactivity do not make a basis for an exemption therefrom, so that plaintiff may maintain an individual action in his own right to redress this alleged wrongdoing as he is attempting to do, and thus avoid the accusation of having misjoined with his individual cause of action one in favor of the corporation.

5. This action was brought by the plaintiff as a former stockholder in the defendant company in behalf of himself and other former stockholders, and also in behalf of present stockholders of the company to obtain relief from the alleged wrongful acts of the individual defendants whereby they had misappropriated to their own use property belonging to the corporation and deceived and injured the plaintiff and others similarly situated. On examination of the complaint, *held*, that certain of its allegations should be construed as attempting to set forth a direct individual cause of action in favor of plaintiff, and that the complaint also sets out what is properly a cause of action in favor of the corporation, hence a demurrer on the ground that the complaint attempts to set out two causes of action which can not be joined must be sustained. (*Witherbee* v. *Bowles*, 201 N. Y. 427, 433; *Anthony* v. *American Glucose Co.*, 146 N. Y. 407, and *Bosworth* v. *Allen*, 168 N. Y. 157, distinguished.)

*Brock* v. *Poor*, 167 App. Div. 784, 798, 800, reversed.

(Argued October 5, 1915; decided December 14, 1915.)

Appeal by each defendant separately, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 7,

1915, which reversed an order of Special Term sustaining a demurrer to the amended complaint and overruled said demurrer.

The following questions were certified on each appeal:

" 1. Is there a misjoinder of causes of action in the complaint ?

" 2. Does the complaint state facts sufficient to constitute a cause of action ? "

The nature of the action and the facts, so far as material, are stated in the opinion, where, although separate appeals have been taken by each defendant, the questions presented are considered as if arising on appeal by all the defendants from one order.

*Nathan L. Miller, Thomas D. Adams* and *Charles A. Brodek* for appellants. The corporation, The Anthony and Scovill Company, is an existing legal entity, and any injury to it must be redressed in an action by it or in its behalf. (*Flynn* v. *Brooklyn City R. R. Co.,* 158 N. Y. 493; *Niles* v. *N. Y. C. & H. R. R. R. Co.,* 176 N. Y. 119; *Kavanaugh* v. *Commonwealth Trust Co.,* 181 N. Y. 121; *People* v. *Ballard,* 134 N. Y. 269; *Brooklyn Steam Transit Co.* v. *City of Brooklyn,* 78 N. Y. 524; *Kincaid* v. *Dwinelle,* 59 N. Y. 548; *Bradt* v. *Benedict,* 17 N. Y. 93; *Geneva Mineral Spring Co.* v. *Coursey,* 45 App. Div. 268; *Hitch* v. *Hawley,* 132 N. Y. 212; *Verplanck* v. *Mercantile Ins. Co.,* 1 Edw. Ch. 84.) Two causes of action are improperly joined. (*Green* v. *Davies,* 182 N. Y. 499; *O'Connor* v. *Virginia P. & P. Co.,* 184 N. Y. 46; *Brinckerhoff* v. *Brown,* 6 Johns. Ch. 139; *Loos* v. *Wilkinson,* 110 N. Y. 195; *Buffalo L. T. & S. D. Co.* v. *Medina Gas & El. L. Co.,* 162 N. Y. 67; *Saranac & Lake Placid R. R. Co.* v. *Arnold,* 167 N. Y. 368; *General Rubber Co.* v. *Benedict,* 215 N. Y. 18.) The plaintiff cannot join a cause of action to recover his stock with one which he could only maintain if a stockholder, *e. g.,* a derivative action on behalf of the corporation. (Story's

Eq. Pleading, §§ 271, 272; Daniel's Ch. Pl. & Pr. [6th Am. ed.] 339; *Groh* v. *Flammer,* 100 App. Div. 305.)

*Burt D. Whedon* for respondent. There is not a misjoinder of causes of action in the complaint. (*Bosworth* v. *Allen,* 168 N. Y. 157.)

HISCOCK, J. This action was brought by the plaintiff as a former stockholder in the defendant The Anthony & Scovill Company in behalf of himself and other former stockholders and also in behalf of present stockholders of said company to obtain relief from the alleged wrongful acts of the individual defendants whereby they had misappropriated to their own use property belonging to said corporation and deceived and injured the plaintiff and others similarly situated. The complaint was demurred to as attempting to set forth two causes of action which could not be joined, one in favor of the plaintiff in his own right and another derivative one in favor of the corporation, and also as failing sufficiently to allege any cause of action. The attack on the first ground, misjoinder of causes of action, has been regarded and treated as the more important both by the Appellate Division and by counsel, and attention will be largely directed to it. Its consideration will require an examination of the complaint, which, notwithstanding any summary that can be made, will necessarily be somewhat lengthy. This consideration will be largely devoted to the claims of the individual defendants, for there is no doubt that if their demurrers are good that of the corporation is well made.

It is alleged that plaintiff was the owner of 314 shares out of a total of 25,000 shares of the capital stock of the Anthony & Scovill Company. Said company having become involved in financial difficulties an agreement was made whereby the defendants Poor and Bennett, and one other who has dropped out of consideration in the

case who had been previously appointed a committee representing creditors, were appointed voting trustees upon such stock as might be deposited with them and also were given the power to sell the said stock. Plaintiff and the owners of about 85 per cent of the capital stock of said corporation and including the corporation itself as the owner of 1,240 shares of its own stock, deposited their stock with said defendants under said agreement. Some considerable time thereafter said defendants and the said defendant Stephens, who had been elected president of the corporation, being in control thereof "conspired together to defraud *the said Anthony & Scovill Company* and its stockholders, including those who had transferred their stock under the said trust agreement," and pursuant to said conspiracy and by steps which it is unnecessary to recapitulate at length diverted to themselves a valuable contract and several thousand shares of stock belonging to and held by the said Anthony & Scovill corporation in another company and which assets were worth several hundred thousand dollars; caused to be organized another corporation known as the Ansco Company and caused a resolution to be adopted at a meeting of the stockholders of the Anthony & Scovill Company " authorizing the voluntary sale of all the property, rights, privileges and franchises of said Anthony & Scovill Company to the said Ansco Company," and thereafter transferred all of the assets of the former corporation to the latter corporation except said contract and said shares of stock hereinbefore mentioned and the 1,240 shares of stock of the Anthony & Scovill Company which had been deposited with them as voting trustees as aforesaid, and which "they fraudulently retained in their own possession;" said defendants caused stock of the new company to be issued for the property of the old company so transferred to it as aforesaid and which stock with the exception of that received by said defendants for said 1,240 shares of stock of the

Anthony & Scovill Company and for said property herein, before mentioned as fraudulently retained by said defendants was distributed amongst the stockholders of the Anthony & Scovill Company and the holders of trustees' certificates for such stock issued as above stated, including the plaintiff.

It is further alleged that at the time of the transfer of its assets as aforesaid the said Anthony & Scovill Company ceased to do business and has transacted none since; that all of its stock except an amount not exceeding one per cent " is now held by or under the control of " the said individual defendants; that it has no indebtedness and that no meeting of its stockholders or directors has been held since said transfer, and that " All of the officers and directors of the Anthony & Scovill Company * * * are under the control of the said " defendants; that although said defendants at the time of said transfer represented to certain stockholders that it was their intention to procure a dissolution of said company after the transfer of said assets they "have failed and neglected to dissolve said company and have kept it alive for the sole purpose of protecting themselves from any action which might be brought against them for the fraud herein alleged by maintaining said company as a barrier between themselves and its stockholders; " that through fraudulent misrepresentation plaintiff was induced to believe that certain shares of stock of the Ansco Company being offered to him by the individual defendants as a dividend upon or substitute for his stock in the Anthony & Scovill Company were his full share of the proceeds of the sale of said assets upon reorganization and to accept the same; that he was without any knowledge " that any of the assets of the Anthony & Scovill Company had been misappropriated or withheld " by said individual defendants, and he and other holders of receipts for stock deposited with said trustees "were fraudulently induced * * * to surrender the said trustees' receipts and all.

right, title and interest in and to their stock in The
Anthony & Scovill Company, and to execute and deliver
to said Poor, Bennett and Stephens certain receipts and
releases, the contents of which plaintiff is not able to give."

Upon these allegations and others which because of a
formal, incidental or amplifying nature need not be sum-
marized, the prayer for relief is made, amongst other
things, *first*, that the defendants Poor and Bennett be
compelled to transfer and deliver to the plaintiff and other
former stockholders of the Anthony & Scovill Company
the stock of that company which they received from them
as trustees under the agreement hereinbefore mentioned,
and that they be compelled to deliver up for cancellation
the releases given by plaintiff and said former stock-
holders at the time the latter received from said defend-
ants the stock in the Ansco Company; *second*, that the
individual defendants be compelled to account for stock
of the Ansco Company received by them on account of
the contract and stock formerly belonging to the Anthony
& Scovill Company and the capital stock of said com-
pany deposited with them under the voting trust
agreement hereinbefore referred to and claimed to have
been misappropriated by them in violation of the rights
of the Anthony & Scovill Company and for dividends
received by them on the stock of the Ansco Company
thus delivered to them; *third*, that a receiver be appointed
to receive from said defendants such property and to
divide and distribute the same among the persons who
were the holders of the capital stock of the Anthony &
Scovill Company or of trustees' receipts therefor.

Interpreted in the light of this prayer for relief, I
think it clear that certain allegations of the complaint
fairly should be construed as attempting to set forth a
direct individual cause of action in favor of plaintiff.
These allegations are the ones to the effect that plaintiff
deposited his stock in the Anthony & Scovill Company with
the defendants Poor and Bennett under the voting trust and

selling agreement and that subsequently he was fraudulently induced by the individual defendants, in consideration of the delivery of a certain alleged equivalent for said stock, to execute releases and surrender his rights to the latter, followed by the prayer that said latter instruments be set aside for fraud, and that his stock in the Anthony & Scovill Company be restored to him. These allegations are the substantial and familiar ones in an action brought to set aside a transfer of property induced by fraud and to secure restoration of the property thus transferred. It is possible that the statement of this cause of action is subject to certain defects. Plaintiff has received certain property on account of stock which he has released and surrendered to defendants and it would seem to be the rule that if he desires to have that transaction set aside and his original stock restored to him he should either have tendered back what he had received before bringing his action or should have offered in his complaint thus to restore what he received as the proceeds of the transaction now alleged to be fraudulent. (*Heckscher* v. *Edenborn*, 203 N. Y. 210, 220; *Vail* v. *Reynolds*, 118 N. Y. 297, 302.) It is not necessary, however, for the purposes of the present discussion to press this question to a final decision for in the consideration of the query whether inconsistent causes of action have been joined in the complaint it need not appear that such causes of action have been completely or perfectly alleged. (*Witherbee* v. *Bowles*, 201 N. Y. 427, 433.)

The plaintiff, however, rejects the theory that the allegations referred to were intended to or do set up an independent cause of action. He says, "The complaint does not state, nor was it intended therein to state, a derivative action by a former stockholder of the Anthony & Scovill Company in the right of said company. The demand by plaintiff for the return of his stock and the cancellation of the release given by him is a mere incident to, and part of, the main cause of action," and which is

1915.] Opinion, per HISCOCK, J. [216 N. Y.]

asserted by him to be an individual cause of action in his favor. Therefore, I next pass to the consideration of the vigorously debated question whether the other allegations of the complaint do set forth a derivative cause of action in behalf of the Anthony & Scovill Company which is distinct from and cannot be joined with a cause of action for the cancellation of releases and restoration of plaintiff's stock. It seems to me very clear that they do thus set forth what under ordinary circumstances would be a cause of action in favor of said corporation.

These allegations, as has already been pointed out, are to the effect that the individual defendants fraudulently have taken away from the Anthony & Scovill Company, which they controlled, and have misappropriated to their individual ownership and use, a large amount of corporate assets. They are full and complete in their assertion of an assault by the individual defendants upon the rights of the corporation. They form the bulk of the pleading. They set forth the foundation of all the complaints against the defendants — that they are misappropriating corporate property. They are too extensive, complete and important to be overlooked, and their natural character and scope cannot be disregarded in the belief that they are the confused and inadvertent expressions of an unskillful pleader who, with the clear intent of setting forth an individual cause of action, has erroneously included some allegations appropriate to the assertion of a different cause of action, as was the case in *Witherbee* v. *Bowles* (*supra*).

In that case it was written by this court, as it cannot be written here, in answer to the attempts of the demurrants to turn what was clearly intended as an individual cause of action into a derivative one by reference to certain isolated allegations: " These clauses are, of course, entirely inappropriate. * * * I do not, however, think that they are of sufficient extent or gravity to overturn the other features * * * in determining the

character of the action.   *   *   *   They are to be attributed to the ignorance or carelessness of the pleader who did not exercise wisdom enough to stop when he had framed appropriate and necessary allegations for the cause of action which he was really trying to enforce."

Such being the character of these allegations, the rule is so well settled as to require no citation of authorities that under any ordinary circumstances the fraud of the officers or managers of a corporation whereby its assets are misappropriated must be redressed by an action brought by the corporation to whom the assets belonged or by a stockholder derivatively in behalf of the corporation. Assuming for the moment that the complaint alleges a case of misappropriation of corporate assets by officers of the corporation which is governed by ordinary rules and which, therefore, must be redressed through an action by or in behalf of the corporation, it seems clear that there is a misjoinder of causes of action. Under these circumstances the allegation of a cause of action in behalf of plaintiff and other former stockholders of the Anthony & Scovill Company to have releases set aside and their stock in said corporation restored to them would be entirely independent of and disconnected from a cause of action in behalf of the Anthony & Scovill Company to recover in its behalf and for its benefit property of which it has been unjustly and fraudulently deprived by the individual defendants.

It may be that if the individual defendants as part of a connected scheme to plunder a corporation and protect themselves from prosecution had fraudulently misappropriated the property of the corporation and fraudulently procured a stockholder to transfer his stock so as to deprive him of the status from which he could bring an action in behalf of the corporation to recover the misappropriated property, an action could have been brought by such former stockholder in behalf of the corporation and asking as preliminary and incidental thereto that

the transfer of his stock be set aside so as to restore him to the position wherefrom he could bring the action.

It seems to have been fairly held by the First Appellate Division on facts very analogous to those alleged here that a plaintiff could not include in one complaint the attempt to procure a cancellation of a transfer of corporate stock fraudulently procured and an attempt to make the defendant who had brought about such fraudulent transfer account for the profits which he had realized on said stock through mismanagement of the corporation. (*Groh* v. *Flammer*, 100 App. Div. 305.)

But it is not necessary for us in the present discussion to adopt such view or determine this question for it would involve a theory of this action which is the exact opposite of that maintained by plaintiff and which is vigorously rejected by him at all points. He insists, not that he is attempting to be restored to the ownership of his stock in order to maintain a derivative action against the defendants, but he insists that he is entitled to maintain an individual action in his own right against the defendants because of their alleged misappropriation of corporate property, and that his attempt to secure possession of his former stock in the Anthony & Scovill Company is an incident to that individual cause of action. Notwithstanding suggestions which now seem to be made to the contrary in our discussion of this appeal, I fail to find the slightest assertion by counsel for the plaintiff that he can unite in this complaint an individual cause of action to recover his stock from defendants and a cause of action in behalf of the corporation to recover its assets wrongfully withheld by said defendants.

It thus being the general rule that a cause of action for relief against the fraudulent acts of officers of a corporation resulting in misappropriation of its assets such as is alleged in the present complaint is one which must be asserted by the corporation or derivatively in its behalf by a stockholder, we come to the question whether the

facts alleged in this action make a basis for an exemption from this rule so that plaintiff may maintain an individual action in his own right to redress this alleged wrongdoing as he is attempting to do, and thus avoid the accusation of having misjoined with his individual cause of action one in favor of the corporation. In the attempt to establish such right some arguments are made which either are not supported by the facts as alleged or which do not meet the question.

It is said that the stockholders and officers of the Anthony & Scovill Company authorized the sale of its assets and the distribution of the proceeds thereof amongst its stockholders, and in effect "has declared a dividend of these proceeds, and the stockholders and not the corporation are now the equitable owners of the same." This argument might be applicable to a claim for distribution of the stock of the Ansco Company which was issued to the officers of the Anthony & Scovill Company for the purpose of being distributed amongst the stockholders within the doctrine of *Anthony* v. *American Glucose Co.* (146 N. Y. 407), but it is not applicable to an action seeking relief against the alleged fraudulent acts of the individual defendants whereby they withhold for their own use and benefit certain assets of the corporation and do not transfer them to the corporation, and do not receive stock in return therefor to be distributed amongst the stockholders.

Much is also said to the effect that the individual defendants were trustees and that trustees will not be allowed to make a secret profit, as will be the case if these defendants are allowed to misappropriate and retain for their own benefit assets which belong to the corporation. Of course this is true, but the question still remains unanswered by this theory whether the remedy for misappropriation of corporate assets is to be sought by or in behalf of the corporation which has been injured or by one who was or is a stockholder therein.

Passing by these arguments which do not seem to require much consideration, there remains the other one which presents a fair subject for debate. This is to the effect that the Anthony & Scovill Company as a corporation had so passed out of active existence and had become such an inanimate shell or unsubstantial fiction that it ought to be disregarded, and one who had been or was a stockholder therein be allowed to bring an action in his own right directly against the individuals who had misappropriated corporate assets. This, as it seems to me, is the only real question on this appeal, and it requires a careful scrutiny of the allegations of the complaint which make for and against an answer favorable to the plaintiff and by which it is to be decided.

As most favorable to him we have the allegations that all of the stock of the corporation is now held by or under the control of the individual defendants except the shares representing not more than one per cent thereof; that all of the officers and directors of said company are under the control of said defendants; that no meeting of the stockholders or directors has been held since the transfer of its assets to the Ansco Company; that all of its debts have been paid and all of its assets transferred to said Ansco Company except the ones alleged to have been misappropriated by the defendants; that it was the intention of the individual defendants to procure a dissolution of said corporation after the transfer of its assets, but that they "have failed and neglected to dissolve said company and have kept it alive for the sole purpose of protecting themselves from any action which might be brought against them for the fraud herein alleged by maintaining said company as a barrier between said company and its former stockholders."

As against or qualifying these allegations we have the ones, or the plain inferences from those which have been quoted, that the corporate organization and existence of the corporation has been maintained; that it can sue and

be sued; that none of its capital stock has been surrendered or canceled and there is outstanding stock of a considerable amount not held by the individual defendants and the owners of which are not parties to this action unless they choose to become so; that its organization of directors and officers has been maintained, and that the corporation is entitled to assets of the value of several hundred thousand dollars, which have been fraudulently withdrawn from it by the defendants.

These allegations carry their arguments on their face. Not much can be added by discussion or amplification. The answer suggests itself quickly one way or the other to the question whether such a corporation is so dead that it can be disregarded in the consideration of property rights which naturally and logically belong to it. Unless it has suffered such a complete dissolution that it must be regarded as no longer capable of holding or administering its property even for the purpose of corporate liquidation and that it must be held that perforce of dissolution and loss of corporate existence and capacity its property and rights have passed to its stockholders as ultimate owners, then the corporation was the one to assert the right to recover misappropriated corporate assets instead of the plaintiff in his individual and independent right. It does not seem to me that a corporation which still possesses all of the substantial elements of corporate existence and organization set forth in the complaint can be regarded as so dissolved and weakened that it can no longer grasp and hold the title to property which concededly on plaintiff's theory belongs to it and that its rights thereto by some rather undefined process of devolution have passed to and been divided up amongst its stockholders.

Not many cases have been cited or found which are thought to bear very directly on this particular question. But in addition to the few which are thus directly relevant, I think that there may properly be cited others as

indicating the force and comprehensiveness of the rule that corporate existence is not lost through mere corporate inaction or transfer of property; that the corporation in respect of corporate property and rights is entirely distinct from the stockholders who are the ultimate or equitable owners of its assets; that even complete ownership of capital stock does not operate to transfer the title to corporate property and that ownership of capital stock is by no means identical with or equivalent to ownership of corporate property.

The fact that the Anthony & Scovill Company is joined as a defendant necessarily admits the fact of its organization and its capacity to sue and be sued. (*Distilling & C. F. Co.* v. *People*, 156 Ill. 448, 481.)

The dissolution of a corporation is not effected by a failure to elect officers or by a sale and assignment of all of its corporate property or by a cessation of all corporate acts. (*State* v. *Mitchell*, 104 Tenn. 336, 343, 344; *Reichwald* v. *Commercial Hotel Co.*, 106 Ill. 439, 451, 452; *Allen* v. *N. J. South. R. R. Co.*, 49 How. Pr. 14, 17.)

It would be the right of the state to take advantage of these facts as a reason for dissolving and winding it up. (Cook on Corporations, page 1924 and cases cited.)

A corporation by virtue of proceedings against it, or by reason of its pecuniary condition, may cease to exist for all practical purposes for which it was created or for which a corporation may exist, but it cannot be held to be actually dissolved till so adjudged and determined either by judicial sentence or the sovereign power. (*Kincaid* v. *Dwinelle*, 59 N. Y. 548, 553; *Brooklyn Steam Transit Co.* v. *City of Brooklyn*, 78 N. Y. 524, 529.)

"In order to justify the inference that a corporation has surrendered its franchises, it is not sufficient that it has become utterly insolvent, or even that every vestige of its property has been sold by a sheriff; but it must also have lost all power to continue or 'to resume its business.'" (*Bradt* v. *Benedict*, 17 N. Y. 93, 97.)

26

One who by purchase or otherwise becomes the owner of all the capital stock of a private corporation, does not thereby become the legal owner of its property but title to the latter is vested in the corporate entity. (*Button* v. *Hoffman*, 61 Wis. 20.)

" In no legal sense can the business (or in an equal sense the property) of a corporation be said to be that of its individual stockholders. It is true that they have an interest in the business carried on, and an influence in controlling its conduct; but they have created a legal entity   *   *   *   and that entity is alone responsible to persons dealing with it for the conduct of such business." (*People* v. *Am. Bell Telephone Co.*, 117 N. Y. 241, 255.)

In *Conley* v. *Mathieson Alkali Works* (190 U. S. 406, 409) the question was whether a corporation was doing business in a given state because it had caused to be organized a new corporation which was doing business there and the entire stock of which new company was transferred to and held by the defendant. Upon this subject the master to whom the question was referred found: "The fact that it held the entire capital stock of the Castner Electrolytic Alkali Company and that the operations of that company were carried on under the same management as before December 31, 1900, is not material. The new corporation was a separate legal entity, and whatever may have been the motives leading to its creation it can only be regarded as such for the purpose of legal proceedings. It was that corporation alone which transacted any business in this state, notwithstanding it may have been for all practical purposes merely the instrument of the defendant corporation." Upon exceptions the master's report and conclusions were affirmed. (See 205 U. S. 392.)

*Watson* v. *Bonfils* (116 Fed. Rep. 157) involved a controversy between creditors of a bank and of two realty corporations which it had caused to be organized. It appeared that the bank had caused these latter corporations to be organized for the purpose of handling its real

estate, had placed in them the title to the latter and was practically the sole creditor of and stockholder in the corporations, and it was held that this arrangement under all of the circumstances was a fraud upon the creditors of the bank. In overruling the claim that the title to this real estate was held in trust for the bank and passed under its assignment for the benefit of creditors, Judge SANBORN wrote: "Nor could the bank disregard or ignore the existence of these realty corporations and convey their title to this land. It is one thing to create a corporation, and another to dissolve it. It is one thing to vest title to property in a corporation. It is another to divest it. Any one may deed land to a corporation, but no one but the corporation can reconvey it. At the time this assignment was made the title to these lots was in the realty corporations. * * * The corporations which held it were existing entities as distinct and separate from their stockholders and creditors as is one individual from another."

In *Jackson* v. *Hooker* (76 N. J. Eq. 592) it appeared that two individuals had purchased all of the stock of a business corporation under an agreement that they should be partners having equal voice and equal control in the management and business of the company; that the corporation should be treated as a mere agency in carrying out the copartnership agreement; that the directors other than the two parties should be mere nominal directors and that corporate forms should be ignored and the business prosecuted and treated as a partnership business. A disagreement having arisen amongst them an action was brought to have the corporate property administered as upon a dissolution of a copartnership. The court, however, refused to do this, holding that no matter what the agreement and actual course of conduct between the parties might be held to be the corporation itself was an entity wholly separate and distinct from the individuals who composed and controlled it.

In *Einstein* v. *Rosenfeld* (38 N. J. Eq. 309), where quite similar facts appeared, it was written: "It is urged, however, that in this case the corporation was but a mere form which the partners gave to what was in fact only a copartnership and that this court is, therefore, at liberty to treat and deal with it as a copartnership. The bill alleges that the corporation is a quasi partnership. It appears by the answer that a partnership was first agreed upon between the parties and it was afterwards agreed between them to form a corporation instead. It is entirely clear that the court in dealing with the subject must treat the company as a corporation, and it cannot, in order to acquire jurisdiction over it to dissolve it, disregard and ignore its form and character."

In *Boston Glass Manufactory* v. *Langdon* (24 Pick. 49) it was held that although a corporation might forfeit its charter by the abuse or misuser of its powers and franchises, yet that this can only take effect upon the judgment of a competent tribunal and that the insolvency of a manufacturing company and the assignment of all of its property to trustees for the payment of its debts and the omission for several years to choose officers or hold meetings did not operate as a dissolution of the corporation so that it could not be sued upon a note.

In *Tilley* v. *Coykendall* (172 N. Y. 587, 591) the plaintiff had recovered a judgment against a towing corporation for negligence. The towing corporation was owned by the defendant, who was really conducting its business, the corporation having been entirely neglected. The plaintiff brought an action against defendant on the judgment alleging that the corporation had ceased to exist, and that the defendant was the real party. A demurrer to the complaint was sustained, Judge O'BRIEN there saying: "Corporations do not always die from neglect to hold elections or to keep up the regular succession of directors and officers. It generally requires the judgment or decree of a competent court or an edict of

the legislature or sovereign power to wholly terminate the legal existence of a corporation. In the absence of one or the other of these events a corporation, however it may be embarrassed from loss of its property or deserted by its officers, has generally life enough left to enable it to sue or be sued."

In *Thompson* v. *Stanley* (20 N. Y. Supp. 317) claims substantially similar to those advanced by plaintiff in the case at bar were made, but it was held that the fact that a corporation had done no business for some years and had no property except a claim against defendant for the proceeds of the corporation's property alleged to have been misappropriated by the defendant's intestate, did not give a stockholder the right to disregard the corporate entity and maintain an action on his own behalf to recover directly from defendant his proportionate share of the funds alleged to have been misappropriated, but that the right to maintain such an action still rested in the corporation.

*Harton* v. *Johnston* (166 Ala. 317) also was an action quite similar to the present one. It was brought to have declared and enforced a resulting or constructive trust in one-half of the capital stock, income and properties of a corporation known as the Empire Realty Company. The action was brought by the complainant as a stockholder of the Ensley Realty Company, and the complainant was confronted with and sought to avoid the general rule which confronts the plaintiff in this case that a stockholder of an existent corporation cannot enforce individual benefits that may or will accrue to him by virtue of his interest in the corporation, but that those rights must be asserted by and in behalf of the corporation itself. As a reason for disregarding this rule it was urged that the corporation in which he held his stock had ceased to exist as such because it had sold all of its property to another corporation which had assumed its debts and had not thereafter engaged in the business for which

it was incorporated. Said purchasing company also gave to the corporation in which complainant held stock its notes for a large amount. It was held under these circumstances that the corporation had not become dissolved and that the complaint was demurrable.

The case of *Anthony* v. *American Glucose Company* (146 N. Y. 407) does not sustain plaintiff's right to maintain the cause of action which has been discussed. It is true that various expressions are used by Judge Finch about dissolved and dead corporations and hollow and empty shells which express the views which it is thought we should hold concerning the Anthony & Scovill Company, but when the case is examined it is found I think that neither these expressions nor anything else in the case is applicable to the present one.

That case was brought against the defendant to compel the delivery by it of certain shares of its stock and it was insisted by it that the action should have been brought against some one else. The facts which appear may be very briefly summarized as showing as the underlying theory of the case that certain corporations and the respective stockholders thereof had sold their assets to the defendant under an agreement that it would pay therefor by issuing its stock in fixed proportions to the stockholders of the vendor corporations of which the plaintiff was one, and it was held that under all of the circumstances the plaintiff might bring her action directly against the defendant instead of through one of the selling corporations to recover the share of stock which it was thus agreed should be delivered to her. As has been said, that case might possibly be an authority for the right of plaintiff to maintain directly against the defendants an action to compel them to pay over and account to him for any share of stock in the Ansco Company which they received for the purpose of delivery to him as a former stockholder in the Anthony & Scovill Company, but in my opinion it utterly fails to sustain the right of

this plaintiff to maintain in his own right directly against the defendants an action to recover his share, not of stock received by them to be delivered to him, but of property claimed to have been misappropriated by them and withheld from the original Anthony & Scovill Company.

The case of *General Rubber Co.* v. *Benedict* (215 N. Y. 18), which is referred to as sustaining plaintiff's complaint, is so utterly inapplicable as an authority that it is unnecessary to consider it at any length. That was simply an action at law by the corporation itself to recover damages resulting from a breach of duty on the part of defendant as one of its directors. The only doubtful question was the one whether the defendant's duty to plaintiff carried such an obligation to endeavor to protect it against certain wrongful and injurious acts of another that he was guilty of a breach of duty wherefrom flowed liability in damages.

In *Bosworth* v. *Allen* (168 N. Y. 157), cited as an important authority, the action was brought by the receiver of a corporation, and of course standing directly in its place, against directors to make them account for wrongful acts and as incident to such relief to have a contract secured by them set aside as fraudulent. There is nothing in the case which even remotely upholds the right of a stockholder in his own right to make directors account for misappropriation of corporate property.

It is urged that even though it be the fact that the Anthony & Scovill corporation is still existent and, therefore, entitled to the corporate property claimed to have been misappropriated by the individual defendants, the latter are estopped from raising this objection to the complaint. I fail to find any sound basis for this contention. The supposed basis for it are the allegations of the complaint that at the time of the transfer of the assets of the Anthony & Scovill Company to the Ansco Company, the defendants represented to "certain of the stockholders" of the former company that "it was their intention to

procure the dissolution" of it, but that they have not procured its dissolution and "have kept it alive for the sole purpose of protecting themselves from any action * * * for the fraud herein alleged by maintaining said company as a barrier between themselves and its former stockholders." I am able to find no allegation any where that this plaintiff has ever done a thing in reliance upon any promise or understanding that these defendants would attempt to procure a dissolution of the corporation in which he is interested. He did not deposit his stock with them under any such understanding and he did not for any such reason vote for any transfer of property from the old to the new corporation because it is specifically alleged that such transfer was authorized at a meeting of which he had no notice. He did not accept the new stock or sign releases on any promise or understanding that the old company had been or would be dissolved. In fact the complaint significantly avoids alleging that any promise ever was made to him that it would be dissolved. That is not his grievance. His complaint is that these defendants are retaining property which belongs to the *corporation*. Therefore, there is no element of estoppel which springs from the fact that the plaintiff has been induced by a promise of dissolution to assume some position which will be rendered less advantageous if the dissolution is not effected.

The only other idea upon which this theory can be predicated is the one that the defendants are refraining from the exercise of their supposed power to have the corporation dissolved because of the advantages to be gained by such a course in the litigation against them. Therefore, to uphold the idea of estoppel would involve the determination that the dissolution of a corporation may be accomplished as to some of its stockholders, with other stockholders outstanding and not parties, by estoppel and because the court or a litigant may think that it will be easier for a stockholder to pursue a wrongdoing officer

directly rather than through and in behalf of the corporation which the latter has defrauded. It does not seem to me that this is or ought to be the law.

In my opinion no difficulty is created by the views set forth in this opinion which prevents the plaintiff from securing in the most ample measure any remedy to which he is entitled. Nothing has been said which bars him from any right which he may have to seek dissolution of the corporation and relief through the Attorney-General. It has not been held, but we have expressly refrained from passing on the proposition, that he must bring two actions to get the relief to which he claims to be entitled. The only fundamental proposition which we have decided is that plaintiff's insistence that a stockholder may bring an action directly against the officers of a corporation to make them account to him personally for property which belongs to the corporation is opposed to the law of this state as settled by an almost endless line of authorities, and that it would not be wise to create confusion in the regulation of the rights of stockholders and corporations by now breaking down the rule in order to meet what may seem to be the exigencies of a particular case.

Apparently based on the allegations of the complaint concerning the transfer of the property of the Anthony & Scovill Company to the Ansco Company and the intent of the defendants to procure the dissolution of the former, the suggestion is also made in the opinion of the Appellate Division: "If necessary the plaintiff and others similarly situated may be entitled to a decree requiring that the Anthony Company be formally dissolved."

I am unable to adopt this conclusion whatever its pertinency might be to the decision of the question we are discussing.

It is not and cannot be claimed that the transfer of its assets operated *ipso facto* as a dissolution of the Anthony & Scovill Company. If it be assumed that such transfer

might furnish the basis for a dissolution this could not be decreed by a court of equity through its inherent power, but should be decreed in proper proceedings under the statutes. (*Denike* v. *N. Y. & R. L. & C. Co.*, 80 N. Y. 599, 605; *People* v. *Ballard*, 134 N. Y. 269, 294.) Furthermore, I think that it could not be reasonably held that so serious a result as the dissolution of a corporation should be decreed as a mere incident to relief in an action to make some of its directors account for alleged wrongdoing, and that is the only theory on which it could be decreed here for no claim to such a judgment is appropriately set forth in the pleading and if one had been there probably would have resulted the statement of still another supposed cause of action.

The conclusions reached in respect of the question which has been discussed render it unnecessary to consider the other question, whether the complaint states a cause of action.

In accordance with these views I recommend that the order of the Appellate Division on each appeal be reversed and that the judgment of the Special Term sustaining the demurrer to the complaint be affirmed, with one bill of costs to appellants in both courts, and that the first question certified to us be answered in the affirmative and that the second one be not answered.

SEABURY, J. (dissenting). It may be that upon the trial the plaintiff could not prove the allegations of the complaint, but the existence of the demurrer requires us to assume the truth of the facts alleged. I do not think it is seriously contended that the complaint fails to state facts sufficient to warrant a court of equity in granting relief to the plaintiff. The chief ground of attack upon it is that it sets forth two causes of action which cannot properly be joined in the same complaint. In support of this attack it is argued that the complaint alleges a cause of action in favor of the plaintiff and also a cause of action

in favor of the Anthony & Scovill Company. The complaint is voluminous. It is necessary to indicate the substance of its allegations. In the first place it should be noted that the plaintiff brings the action in his own behalf and also in behalf of all similarly situated former stockholders and present stockholders of the Anthony & Scovill Company. The complaint alleges the incorporation of the Anthony & Scovill Company under the laws of the state of New York; that the plaintiff was one of the stockholders therein; that said company became involved in financial difficulties; that a creditor's committee was formed to relieve this situation, and the defendants and others were members of that committee. As a condition of the reissue and extension of certain notes of the company the defendants demanded that a majority of the stock of the company be delivered to them as trustees for the purpose of giving them complete control of the company. In compliance with that demand a large majority of the stockholders, including the plaintiff, transferred, and delivered to the defendants, as trustees, upwards of 85% of the said stock and received trustees' receipts in exchange therefor. Pursuant to the agreement under which this stock was transferred to the defendants, the latter were to exercise all the rights of owners of said stock and have the right to sell the same and apply the proceeds to the payment of the debts of the company. Among the assets of the company was the so-called Goodwin contract under which 5,100 shares of the stock of the Goodwin Film and Camera Company had been transferred to the Anthony & Scovill Company. The defendants as committee of creditors and trustees for the stockholders demanded that the Goodwin contract be assigned to them as security for the indebtedness of the company. The Goodwin contract had become a very valuable asset. In November, 1905, the defendants were in complete control of the Anthony & Scovill Company and all of its property, and were in possession of 85% of

the stock of the Anthony & Scovill Company which they had obtained under the voting trust agreement. Having thus secured control of the rights and property referred to, the complaint alleges that the defendants conspired together to defraud the Anthony & Scovill Company and its stockholders, including those who had transferred their stock to them under the voting trust agreement. The other acts of the defendants are alleged to have been done pursuant to this unlawful conspiracy. Pursuant to this conspiracy and in furtherance thereof, the defendants caused the Anthony & Scovill Company to return to them the 5,100 shares of stock of the Goodwin Film and Camera Company and to cancel said Goodwin contract with said company, and the defendants then entered into a contract with the owners of said shares, whereby the said 5,100 shares of stock, which represented a controlling interest in said Goodwin Film and Camera Company, were delivered to them, individually, subject to a certain trust agreement for securing certain creditors of said Goodwin Film and Camera Company. Under this agreement, the subject-matter of which was the Goodwin patent, the defendants were to receive 51% of the proceeds of said patent. Pursuant to said conspiracy the defendants caused the Ansco Company to be organized, which company was completely under the control of said defendants, and caused the Anthony & Scovill Company to transfer to said Ansco Company all of its property, rights, privileges and franchises, except the said Goodwin contract and the 5,100 shares of stock of the Goodwin Film and Camera Company and 1,240 shares of the common stock of the Anthony & Scovill Company which they fraudulently retained in their possession. The defendants issued in return for the property of the Anthony & Scovill Company so transferred to the Ansco Company 1,700 shares of the common stock of the Ansco Company. Said stock with the exception of 49.60 shares thereof was distributed by the defendants among the

stockholders of the Anthony & Scovill Company and the holders of the trustees' receipts. The complaint is replete with allegations showing the trust and confidence reposed by the plaintiff and other stockholders in the defendants and that the plaintiff and other stockholders were fraudulently induced by defendants to surrender to them the trustees' receipts and all right, title and interest that they had in and to their stock in the Anthony & Scovill Company, and to execute and deliver to defendants receipts and releases. The defendants at the time of the transfer of the assets of the Anthony & Scovill Company to the Ansco Company agreed to procure the legal dissolution of the Anthony & Scovill Company but failed and neglected so to do and have kept said corporation " alive for the sole purpose of protecting themselves from any action which might be brought against them for the fraud herein alleged by maintaining said company as a barrier between themselves and its former stockholders." Pursuant to said conspiracy it is alleged that the defendants upon the 1,240 shares of common stock of the Anthony & Scovill Company which had been transferred to them obtained 49.60 shares of the common stock of the Ansco Company which they appropriated to their own use. At the time of the transfer of the property of the Anthony & Scovill Company to the Ansco Company all of the indebtedness of the Anthony & Scovill Company was paid. The defendants retained in their possession the Goodwin contract and the 5,100 shares of stock of the Goodwin Film and Camera Company until May, 1910, when they sold said stock and contract to the Ansco Company in return for 4,030 shares of the common stock of that company. The Ansco Company has paid a 100% dividend on its common stock, and the defendants as holders of said 4,030 shares received $403,000 as a dividend thereon which they have appropriated to their own use. As holders of 49.60 shares of the stock of the Ansco Company which they received as dividends upon the 1,240 shares of stock of

the Anthony & Scovill Company, the defendants received about $25 000. The Anthony & Scovill Company has ceased to do business since the transfer to the Ansco Company. All of its stock is under the control of the defendants except a few shares representing not more than 1% thereof. That company has now no indebtedness of any kind. No meetings of stockholders or directors have been held and no election of officers or directors has been had since the transfer of its assets to the Ansco Company, and since the transfer to the Ansco Company it is evident that the defendants have treated the Anthony & Scovill Company as if it were non-existent. The complaint demands an accounting and other incidental relief. From these allegations of this complaint it is evident that the acts of the defendants as trustees under the trust agreement and as trustees in control of the Anthony & Scovill Company are so closely connected and interwoven that they cannot be separated. It is a necessary inference from the allegations of the complaint that these acts were all a part of a common scheme to defraud, and if the defendants can only be called to account in two separate actions — one existing in favor of the plaintiff individually and others similarly situated and the other existing in the corporate entity, it is evident that complete and effective relief cannot be granted in either action. These facts reveal the history of the formation and execution of a conspiracy by the defendants to deprive the stockholders of the Anthony & Scovill Company of the rights and profits arising from their individual ownership of that stock and to loot the Anthony & Scovill Company and its stockholders. They also show as a part of that conspiracy that the defendants, contrary to their agreement, failed to cause the Anthony & Scovill Company to be legally dissolved. The question is presented in this case whether the allegation of this fact, *inter alia*, makes the complaint demurrable for misjoinder of causes of action. In the last analysis this claim of the appellants

reduces itself to the contention that, because the defendants in carrying out the fraudulent conspiracy alleged kept alive the corporate entity of the Anthony & Scovill Company, contrary to their agreement, they cannot be called to account by the plaintiff in a cause of action which alleges all the facts as the pleader claims they took place. If the defendants had carried out their agreement and brought about the legal dissolution of the Anthony & Scovill Company, the complaint would not be demurrable on the ground of misjoinder, but since they were cunning enough in carrying out the conspiracy to keep alive the corporate entity, although they stripped it of all its corporate attributes and plundered it of its property, they can now interpose the mere existence of that corporate entity as a shield of defense in this action to compel them to account. The plaintiff was required to set forth all the facts. It was a fact in this case that the defendants had not caused the corporation to be legally dissolved. I do not think that the allegation of this fact, when considered in connection with the other facts alleged, necessarily involves the statement of an independent cause of action, derivative in its nature, which cannot properly be joined with the cause of action which the complaint sets forth in behalf of the plaintiff and those for whom he brings this action. The fact that the defendants pursuant to the unlawful conspiracy alleged, kept the corporate entity alive cannot be used to defeat the plaintiff's present claim unless the defendants can avail themselves of their own fraud to defeat the claim of those whom they have defrauded for an accounting and other appropriate relief. The defendants treated the corporation as non-existent and are estopped from asserting the contrary. Upon the facts alleged it seems to me that a court of equity should look behind the fiction of corporate entity and examine the facts and if upon such examination it appears that the plaintiff has alleged a cause of action, his claim will

not be defeated because the defendants in violation of their agreement and as a part of the fraudulent conspiracy kept the corporate entity alive. Conspirators cannot thus avail themselves of their own wrong, nor will a court of equity be tolerant of such a purely technical plea when it is interposed by the wrongdoer to enable him to reap the fruits of his unlawful conspiracy. It is doubtless true that corporate existence is not lost through mere corporate inaction or the transfer of its property or by the failure to elect officers. All this I concede, but this concession does not militate against the correctness of the plaintiff's position. The circumstance which distinguishes this case from those cited in support of the claim of the appellants is that here the fact that the corporation still exists is a result of the execution of the fraudulent conspiracy into which the defendants entered. If the defendants had kept their agreement with the stockholders of the corporation and caused the corporation to be legally dissolved, they would not now be possessed of any weapon with which to repel the plaintiff's present attack. A court of equity does not regard the mere fiction of corporate entity as such a sacred thing that it cannot upon the facts disclosed in this complaint be disregarded in order to enable it to do justice and to compel conspirators to account. The decisions which seem to indicate the contrary are to be read in the light of the facts in reference to which they were made. Examined in this way, I think no case can be cited which goes to the extent that the appellants would have us go in this case. In the case of *Anthony* v. *American Glucose Co.* (146 N. Y. 407, at p. 413) Judge FINCH, speaking for this court in reference to a technical plea similar to that made in this case, said: " The defense is not meritorious. It simply attempts to substitute circuity of action for direct responsibility, and requires us to blind our eyes with the theoretical abstraction so as to shut out the obvious and undoubted truth.

We have of late refused to be always and utterly trammelled by the logic derived from corporate existence where it only serves to distort or hide the truth, and I think we should not hesitate in this case to reject the purely technical defense attempted." The opinion in that case is not merely a display of judicial rhetoric about dissolved and dead corporations and hollow and empty shells, but enunciates a wholesome and important rule which in cases such as the present should in the interest of justice be applied. It asserts a principle that has often been recognized. (*McCaskill Co.* v. *U. S.*, 216 U. S. 504, 514; *Booth* v. *Bunce*, 33 N. Y. 139; *U. S.* v. *Milwaukee Refrigerator Transit Co.*, 142 Fed. Rep. 247, 248; *Matter of Rieger, Kapner & Altmark*, 157 Fed. Rep. 609; Cook on Corporations, vol. 3 [7th ed.], 663, 664 and notes.)

The complaint as I read it pleads a single cause of action against the defendants as constructive trustees for several breaches of trust. It is apparent from reading the whole complaint that it was not intended to allege a derivative cause of action. When this appears the mere fact that there are allegations in the complaint which might be appropriate in a derivative action will not change the charactor of the action The true character of the action is to be ascertained from an examination of the whole complaint. (*Witherbee* v. *Bowles,* 201 N. Y. 427.) The defendants as trustees agreed to bring about the legal dissolution of the Anthony & Scovill Company. Although they have not done this, they have acted upon the assumption that that corporation no longer exists. The corporation itself has no creditors. The plaintiff and other stockholders for whom this action is brought have a right to call upon the defendants to account for their acts as trustees. The accounting should involve all the acts of the trustees that were done pursuant to the common scheme to defraud in whatever capacity they

27

may claim to have acted. I think that the decisions of this court in *Witherbee* v. *Bowles* (*supra*) and *Bosworth* v. *Allen* (168 N. Y. 157) afford ample basis for sustaining the plaintiff's contention.

The doctrine of misjoinder of causes of actions, which is invoked to sustain the demurrer to this complaint, when applied to equity pleading, rests upon considerations of inconvenience and expense. It is not a hard and fast rule applicable in all cases regardless of the circumstances alleged. (*Hosmer* v. *Wyoming Ry. & Iron Co.*, 129 Fed. Rep. 883; Pomeroy's Code Remedies, § 486.) It is doubtless true that the general rule is that the right to maintain a suit against the officers of a corporation for fraudulent misappropriation of its property is a right of the corporation rather than of the stockholders. (*Porter* v. *Sabin*, 149 U. S. 473, 478.) I think the circumstances disclosed in this complaint require the application of a different rule. The fact that the defendants agreed to bring about the legal dissolution of the Anthony & Scovill Company, that they have violated this agreement, that they have treated the corporation as if it were dissolved, that they have fraudulently secured the stock of the stockholders, and obtained releases from the stockholders, and thus deprived the plaintiff and others similarly situated of any standing as a stockholder, and the fact that the acts of the defendants claimed to have been done in separate capacities are so related and confused that to disentangle them and prove two separate causes of action would as a practical matter be impossible, justifies the method of pleading adopted. Under such circumstances the rule against multifariousness or misjoinder should not be rigidly applied.

I have discussed the case on the theory that the complaint states only a cause of action on behalf of the plaintiff and others similarly situated. Even if it also states a cause of action in the Anthony & Scovill Company it is not, in view of the facts alleged, demurrable for mis-

joinder. The pleader, for prudential reasons, has made the corporate entity or whatever may be left of it a party defendant in this action. If upon a hearing which shall develop all the facts it shall appear that this corporate entity may be re-invested with the property that had been misappropriated by the defendants a court of equity may so order. Assuming for the sake of argument that the complaint does state a cause of action on behalf of the plaintiff and also a cause of action on behalf of the Anthony & Scovill Company under the circumstances alleged in the complaint, the demurrer for misjoinder should not be sustained. Any claim growing out of the facts alleged, that may exist in the plaintiff on his own behalf and any claim that may exist on behalf of the Anthony & Scovill Company, is founded on the same facts and would warrant the same or similar relief. In equity in such a case such claims or causes of actions may be joined without being obnoxious to the rule against misjoinder or multifariousness. (*Jones* v. *Missouri Edison El. Co.*, 144 Fed. Rep. 765.) In the case last cited the corporation in which the plaintiff was a stockholder was consolidated with another corporation. The plaintiff brought an action as a minority stockholder on behalf of his corporation and on his own behalf and it was held that a bill is not multifarious which presents a common point of litigation, the decision of which will affect the whole subject-matter and settle the rights of all the parties to the suit. In that case Judge SANBORN wrote what with slight change could be appropriately written here: "Counsel for the defendants argues with an ingenuity and persuasive force that command admiration that, conceding the wrong, there are many reasons why a court of equity can apply no remedy under this bill. He says that the existence of the consolidated corporation may not be collaterally assailed and annulled by a private party and that it may be successfully questioned by the state only, and he cites in support of this con-

tention * * * [citing cases] * * *. But not one of these decisions holds that the perpetrator of a fraud or the abuser of a trust or their privies may shield themselves behind the inactivity of the state, quiet the conscience and escape the grasp of a court of chancery more successfully by appropriating the property of a *cestui que trust* by means of a consolidation of corporations than he may by a decree of foreclosure and sale (*Jackson* v. *Ludeling,* 21 Wall. 616), by a transfer of all the property of a corporation and its dissolution (*Ervin* v. *Oregon Ry. & Navigation Co.,* 20 Fed. Rep. 577, 580), by a lease (*Meeker* v. *Winthrop Iron Co.,* 17 Fed. Rep. 48), or by any other legal device he may happen to adopt. The cases he cited have to do with transactions free from fraud, and while possibly pertinent to the charge in the bill that the consolidation was not authorized by law, they have no relevancy to the cause of action for fraud and breach of trust in the conception and execution of the consolidation." Whether we view the complaint as I think it should be viewed, as stating a cause of action in the plaintiff or regard it as stating a cause of action in behalf of the plaintiff and also a cause of action in behalf of the corporation is immaterial, as it is clear from the complaint that it presents a common point of litigation the decision of which will determine the whole subject-matter and settle the rights of all the parties to the suit. If the view that the complaint states only a cause of action on behalf of the plaintiff is correct, the demurrer should be overruled. If, however, the complaint does unite two causes of action demanding the same relief, it is not under the circumstances existing in this case such an improper union as to render the complaint demurrable on the ground of a misjoinder of causes of action.

For the reasons stated above I vote in favor of affirming the order of the Appellate Division on each appeal which reversed the judgment of the Special Term sustaining the demurrer to the complaint and in favor of

answering the first question certified to us in the negative and the second question in the affirmative.

CHASE, CUDDEBACK and HOGAN, JJ., concur with HISCOCK, J.; SEABURY, J., reads dissenting opinion; WILLARD BARTLETT, Ch. J., absent; CARDOZO, J., not sitting.

Orders reversed, etc.