## The Boston Glass Manufactory *versus* Mary Langdon and Trustee.

A corporation cannot surrender its charter without some solemn act of the corporation for that purpose ; and a surrender will not be of any avail until accepted by the government.

Where a manufacturing corporation became insolvent and assigned all its property to trustees for the payment of its debts, and the instrument of assignment contained covenants that the assignees might use the name of the corporation for the collection of debts and the distribution of the property assigned, and that the corporation would perform any further acts which might be required to enable the assignees fully to execute their trust ; and the corporation omitted, for several years, to choose officers or hold meetings, the by-laws however providing that the officers (though chosen for one year) should continue in office till others should be chosen in their stead ; it was *held*, that the corporation had not been dissolved.

Where, in an action by a corporation upon a promissory note, the defendant pleaded in abatement, that there was no such corporation as was in the writ supposed, and issue was joined upon that fact, the defendant was not permitted, on the trial before the jury, to allege and prove, in reference to the damages, that there was no consideration for the note, the judgment against the defendant being peremptory in case of his failing to support his plea in abatement.

Assumpsit on a promissory note given by the defendant to the plaintiffs. The defendant pleads in abatement, that at the time of the purchase of the writ there was not, and now is not, any such corporation established by law, called the Boston Glass Manufactory, as in and by the writ is supposed. The plaintiffs' reply that there was and is such a corporation ; and tender an issue ; which is joined.

At the trial, before *Morton J.*, the plaintiffs offered in evidence their act of incorporation, and showed their organization under it in 1811.

The records of the corporation were introduced by the plaintiffs, and were used and relied upon by both parties.

The defendant then introduced an indenture, dated the 27th of May, 1827, assigning all the property of the corporation to certain persons, in trust to pay, *pro ratâ*, such creditors as should become parties to the indenture. This instrument contained covenants, that the assignees might use the name of the corporation in the collection of the debts, and in the disposition of the property assigned ; that the corporation would not hinder or obstruct them in the performance of these functions :

Boston
Glass Man-
ufactory
v.
Langdon
and Tr.
and that it would make any further conveyances and assurances which might become necessary, and perform any other and further acts which might be required to enable the assignees fully to execute their trust. No provision was made for a release to the corporation by the creditors, nor for paying over to the corporation the surplus, if any, of the property assigned. The defendant also referred to all the records subsequent to 1817, and contended that the assignment of the property of the corporation, and the omission to hold annual meetings, to choose directors, and to transact business, as appears by the records and books of the corporation, supported the issue on her part and entitled her to a verdict.

But the jury were instructed, that the evidence was competent to prove the establishment and continuance of the corporation down to the present time.

The plaintiffs then claimed to have the damages assessed by the jury, if they found a verdict in their favor, and offered in evidence the note declared on. This was objected to by the defendant, because the note had been assigned. But the objection was overruled.

The defendant then offered to prove that the note was without consideration. This evidence was objected to and was excluded.

The jury found a verdict for the plaintiffs for the whole amount of the note and interest.

The defendant excepted to the decisions and instructions of the judge; and for the reasons above appearing, moved for a new trial.

*April 1st, 1834.*    *Austin,* for the defendant. The corporation was shown to have been *discontinued before the commencement of this action.* It was insolvent, and all its property, including the note now in suit, was conveyed absolutely to trustees for the benefit of such creditors as became parties to the indenture, without any provision that a surplus should revert to the corporation or that the creditors should give the corporation a release. Neither were any officers chosen, nor any meetings held by the corporation, after the date of the assignment; and the officers previously elected had ceased to be competent to act as such, for all of them had become insolvent and had parted with their

shares in the corporate property. The bankruptcy of a corporation, alienation of all its property, and cessation to do business, amount to a dissolution. *Brinckerhoff* v. *Brown*, 7 Johns. Ch. R. 217 ; *Slee* v. *Bloom*, 19 Johns. R. 456 ; 2 Kent's Comm. (1st ed ) 250; *Penniman* v. *Briggs*, 1 Hopkins, 300 ; *S. C.*, 8 Cowen, 387.

The jury having found against the defendant on the plea in abatement, should have proceeded to assess the damages on proper testimony upon that question, and no greater damages should have been assessed than if the defendant had pleaded the general issue. If the defendant has two defences, one in abatement and one in bar, he ought to be allowed to avail himself of the latter in case the former fails him ; otherwise injustice must be done.

*Sullivan*, for the plaintiffs.

MORTON J. delivered the opinion of the Court.* The non-existence or death of the plaintiff may properly be pleaded in abatement. 1 Chitty's Pl. 482 ; Story's Pl. 24. But whether, as it entirely and perpetually destroys the plaintiff's right to recover, it may not also be pleaded in bar, it is not necessary to determine. *Proprietors of Monumoi* v. *Rogers*, 1 Mass. R. 159 ; *First Parish in Sutton* v. *Cole*, 3 Pick. 245. Whether the plea conclude in abatement or bar, the issue being found against the defendant, the judgment must be peremptory. The established rule is, that in dilatory pleas, when the issue is found against the defendant on matters of fact, the judgment must be in chief. Gould's Pl. 300 ; Howe's Pract. 215.

The principal question for our consideration is, whether judgment shall be rendered on the verdict. The defendants' counsel contends that the evidence introduced will not support the verdict, but that the verdict is against the evidence and the law and should be set aside.

The point which has been determined by the jury, though necessary to be submitted to them with proper instructions, is quite as much a matter of law as of fact ; and we the more readily enter into the examination of it.

Boston Gluss Manufactory v. Langdon and Tr.

*April 7th,* 1834.

---

* *Shaw* C. J. did not sit in the cause.

The legal establishment and due organization of the corporation were admitted ; but it was contended that the facts disclosed showed a dissolution of it.

The elementary treatises on corporations describe four methods in which they may be dissolved. It is said that private corporations may lose their legal existence by the act of the legislature ; by the death of all the members ; by a forfeiture of their franchises ; and by a surrender of their charters. 2 Kyd on Corp. 447 ; 1 Bl. Comm. 485 ; 2 Kent's Comm. (1st ed.) 245 ; Angell & Ames on Corp. 501 ; *Oakes* v. *Hill*, 14 Pick. 442. No other mode of dissolution is anywhere mentioned or alluded to.

1. In England, where the parliament is said .to be omnipotent and where in fact there is no constitutional restraint upon their action, but their own discretion and sense of right, corporations are supposed to hold their franchises at the will of the legislature. But if they possess the power to annul charters, it certainly has been rarely exercised by them. In this country, where the legislative power is carefully defined by explicit fundamental laws, by which it must be governed and beyond which it cannot go, it has become a question of some difficulty to determine the precise extent of their authority in relation to the revocation of charters granted by them. But as it is not.pretended that there has been any legislative repeal of the plaintiffs' charter, it will not be useful further to discuss this branch of the subject.

2. As all the original stockholders are not deceased, the corporation cannot be dissolved for the want of members to sustain and exercise the corporate powers. Besides, this mode of dissolution cannot apply to pecuniary or business corporations. The shares, being property, pass by assignment, bequest, or descent, and must ever remain the property of some persons, who of necessity must be members of the corporation as long as it may exist.

3. Although a corporation may forfeit its charter by an abuse or misuser of its powers and franchises, yet this can only take effect upon a judgment of a competent tribunal. 2 Kent's Comm. (1st ed.) 249 ; *Corporation of Colchester* v. *Seaber*, 3 Burr. 1866 ; *Smith's case*, 4 Mod. 53. Whatever

neglect of duty or abuse of power the corporation may have been guilty of, it is perfectly clear that they have not lost their charter by forfeiture. Until a judicial decree to this effect be passed, they will continue their corporate existence. *The King* v. *Amery*, 2 T. R. 515.

4. Charters are in many respects compacts between the government and the corporators. And as the former cannot deprive the latter of their franchises in violation of the compact, so the latter cannot put an end to the compact without the consent of the former. It is equally obligatory on both parties. The surrender of a charter can only be made by some formal solemn act of the corporation ; and will be of no avail until accepted by the government. There must be the same agreement of the parties to dissolve, that there was to form the compact. It is the acceptance which gives efficacy to the surrender. The dissolution of a corporation, it is said, extinguishes all its debts. The power of dissolving itself by its own act, would be a dangerous power, and one which cannot be supposed to exist.

But there is nothing in this case which shows an intention of the corporators to surrender or forfeit their charter, nor any thing which can be construed into a surrender or forfeiture.

*The possession of property is not essential to the existence of a corporation.* 2 Kent's Comm. (1st ed.) 249. Its insolvency, cannot, therefore, extinguish its legal existence. Nor can the assignment of all its property to pay its debts, or for any other purpose, have that effect. The instrument of assignment was not so intended, and cannot be so construed. All its provisions look to the continuance of the corporation. It contains covenants that the assignees may use the corporate name for the collection of the debts and the disposition of the property assigned ; that the corporation will not hinder or obstruct them in the performance of these functions ; that it will make any further conveyances and assurances which may become necessary, and will do and perform any other and further acts which may be required to enable the assignees fully to execute their trust. The instrument which covenants for future acts, cannot be construed to take away all power of action.

Boston
Glass Man-
ufactory
v.
Langdon
and Tr.

The omission to choose directors clearly does not show a dissolution of the corporation. Although the proper officers may be necessary to enable the body to act, yet they are not essential to its vitality. Even the want of officers and the want of power to elect them, would not be fatal to its existence. It has a potentiality which might, by proper authority, be called into action, without affecting the identity of the corporate body. *Colchester* v. *Seaber*, 3 Burr. 1870.

But here in fact was no lack of officers. Although no directors had been chosen for several years, yet, by the by-laws of the corporation, the directors, though chosen for one year, were to continue in office till others were chosen in their stead.

The damages were properly assessed by the jury. The defendant having elected to try her case upon a plea in abatement, must submit to the legal consequences of that form of trial. Perhaps the Court might have assessed the damages as in case of default. But most obviously the better course was to submit the subject to a jury. In doing this the defendant could not be allowed to go into the whole defence as upon the general issue. The rule adopted at the trial was the correct one.

*Judgment according to verdict.*