## LAMAR *et al. v.* ALLISON.

Where a corporation had ceased to exercise the franchises conferred upon it, and to conduct the corporate business thereunder, and all of its assets had been distributed among, and appropriated by, the stockholders to their own use, before such stockholders, in an action at law, can be held liable to a creditor of the corporation as trustees ex maleficio, the debt of such creditor must be first reduced to judgment against the corporation, and a return of nulla bona entered upon the execution issued thereon. There being generally no privity between stockholders and creditors of a corporation, the former, in the absence of a statute imposing such liability, are not, as a consequence of their misappropriation of the corporate assets, answerable over directly to the latter for the debts of the corporation until the liability of the corporation is established in the manner above indicated.

Argued April 20, — Decided May 21, 1897.

Equitable petition. Before Judge Milner. Bartow superior court. July term, 1896.

*John C. Reed* and *Rosser & Carter*, for plaintiffs in error.
*John W. Akin*, contra.

ATKINSON, J. The plaintiff filed his declaration against the defendants, in which he alleged, in substance, as follows: The Etowah Iron & Manganese Company was a corporation duly organized and existing under and by virtue of the laws of Georgia, and as such employed petitioner as its superintendent from January 1 to September 1, 1889, at a salary of $175.00 per month. As such superintendent petitioner was required to discharge various duties, which are not material to be here set forth, but which he did discharge to the best of his skill and knowledge and to the satisfaction of said company. The salary thus due petitioner from said company amounted to $1,400, in addition to which said company was indebted to petitioner on August 31, 1889, as follows: (The petition here set out an account for traveling expenses and other items, with credits, showing a balance due by the company to the petitioner of $872.) Said company's officers reside in the county of Ful-

ton, and the charter of said company was granted by the superior court of Fulton county. Said company's property consisted almost entirely of land in the county of Bartow and Cherokee, "all" of which, both in quantity and value, lay and lies in Bartow county, Georgia; and it was here that petitioner, as superintendent as aforesaid, lived and transacted the business of said company, to wit in Bartow county, and it was here that said corporation conducted its business and had its place of business and offices and mined and resided. On September 2, 1889, said corporation sold and conveyed all of its property to Joseph M. Gazzam and Arthur O. Granger, by conveyance recorded in the clerk's office of Bartow superior court, and received therefor the sum of $180,000.00. The officers of said corporation proceeded to pay off all its debts except this one which it owed to petitioner, and to divide out the balance remaining in their hands among its stockholders. The stockholders of said corporation were the parties named as defendants to this suit. Thereupon said corporation became practically defunct and dead, and it has exercised no functions, filled no offices, transacted no business, owned no property, performed no corporate acts, since the division of the property aforesaid, which occurred some time in the year 1892. The directors of said corporation were L. J. Hill, J. W. Rankin, H. J. Lamar, H. J. Lamar Jr., C. T. Swift, Louis Gholstin, Aaron Haas, A. J. Orme, J. H. Porter, and perhaps others. The distribution of said funds aforesaid gave to each stockholder one hundred cents on the dollar, or more, for the amount of money which he had invested in the capital stock of said corporation. Said stock was largely diluted or "watered"; that is to say, the par value of the shares of stock held respectively by each of the parties aforesaid (each of whom held one twelfth part of said stock except J. H. Porter, Thomas P. Stovall and T. R. Jones, who each held one twenty-fourth part thereof), was largely more than the real amount paid in by them. Wherefore petitioner charges that they received more than one hundred cents on the dollar for the amount of capital stock actually subscribed and paid in by them respectively. The directors of said corporation, notwithstanding petitioner's

debt, proceeded, in breach of their duty to petitioner and in violation of the trust resting upon them, to pay out said funds without paying off the debt of petitioner; and said stockholders received, without any right thereto, the full amount of the net proceeds of the sale of said property without reference to the debt of petitioner; whereby said directors became liable to petitioner for the full amount of his said debt, both severally and jointly, for breach of the trust aforesaid; and whereby each of said stockholders became liable to petitioner to the amount received by said stockholders from the proceeds of the sale aforesaid of said corporation's property, and each stockholder received more than the amount of petitioner's debt. Wherefore petitioner claims that as between himself and each and all of said stockholders, each and all of them are jointly and severally liable, as well as said directors, for said debt. Said corporation has now no officers and no place of business, and no residence and no person upon whom service can be perfected, and no way of bringing said corporation into court. In fact said corporation does not exist, and has been wound up by act of all the defendants aforesaid, which petitioners assert they are estopped to deny. Petitioner can not more in detail state the facts concerning the conduct of said corporation, because the officer thereof who kept the record thereof, its secretary and director, Aaron Haas, refuses to disclose the said facts to petitioner, and petitioner has no means of knowing. Petitioner commenced suit on this same demand to the spring term, 1891, of the superior court of Fulton county, Georgia, which there pended until December 25, 1894, against the same parties, and was then dismissed before the filing of the present action, the dismissal being June 7, 1895. J. W. Rankin and Thomas P. Stovall, now deceased, insolvent, and O. C. Fuller, now non-resident of this State, were also stockholders, each owning one twelfth of said capital stock. Petitioner prayed judgment against all the defendants, jointly and severally, for the amount of the debt, and for such other and further relief as the law and facts entitle him to claim.

Afterwards the declaration was amended as follows: The directors and stockholders of said corporation held all of its

assets in trust for its creditors, of whom petitioner was one. Petitioner continued to hope and expect for payment of his account, but petitioner had no means of knowing the names of the stockholders of said company; and the officers thereof, as well as the stockholders, failed and refused to disclose the names of such stockholders to petitioner, though often thereto requested. They continued to mislead petitioner and conceal facts from him in violation of their trust. In bringing the suit referred to in the petition, petitioner joined as defendants all of the stockholders and directors whom he knew to be such and whom he could discover. He would have joined all, but for the breach of faith towards petitioner as a creditor of said corporation on the part of the officers and stockholders in refusing petitioner's demand to know who were the stockholders and officers. Immunity from suit as to some of these stockholders was thus secured by the breach of faith on the part of said directors and stockholders, and particularly on the part of Aaron Haas, who was the secretary of said corporation, and whose duty it was as secretary to disclose to petitioner the names of the stockholders and directors, so that he might properly bring suit, but who, as said secretary and in behalf of said officers and stockholders, refused so to do. This breach of faith and trust delayed suit, and petitioner pleads these facts as legal excuse for failure to sue sooner. There are, and were when this suit and the one hereinbefore referred to were filed, no other debts due by said corporation, and no other creditors thereof except petitioner. Said corporation was in 1892 dissolved in fact, and all its property sold, and all its business wound up in fact. Since 1892 it has had neither property, business, office nor place of business, and has been ever since then in a state of dissolution and insolvency, and its franchises were then voluntarily surrendered. Petitioner's debt was a debt due by said corporation. This corporation being dissolved in 1892, and the stockholders, defendants, having received the proceeds of the sale of all the property of said corporation, which then and there voluntarily surrendered its franchises, became liable personally, then and not till then, to the extent of the money received by them, which was ample

to discharge petitioner's debt.   Within four years from the time they so become liable, this action is brought.

The defendants, among other grounds, demurred generally to the declaration, for the reason that it set forth no cause of action against them, and that if liable at all to the plaintiff, they could only be held liable through the corporation, of which they were alleged to have been stockholders, and after judgment had been obtained against it.   The demurrer was overruled, and the defendants excepted.

If the plaintiff had a right of action against these defendants, it must have resulted from the breach of some duty, imposed either by contract or by law upon the defendants in favor of the plaintiff, and which breach resulted in injury to the plaintiff.   According to the allegations contained in the declaration, there was no contract relation between the plaintiff and the defendants.   He alleged that he had rendered certain services for and at the request of the Etowah Iron and Manganese Company, a corporation the capital stock of which was owned by the defendants.   He alleged the performance of such services, and a failure upon the part of the corporation to pay therefor. There was then, as to the plaintiff, a breach of duty upon the part of the corporation; but it is obvious that the contract between the plaintiff and the corporation could not impose a duty of performance upon the stockholders in that corporation. The corporation was not itself a party to this suit, and therefore it can never be judicially determined in this suit that there has been a breach of duty upon the part of the corporation toward this plaintiff.   So, even if this action were maintainable at all, it could not be prosecuted to judgment without the corporation being made a party defendant.   The mere fact that the corporation had ceased to exercise its franchises, or to conduct the corporate business, or that all of its corporate assets have been distributed among its stockholders, affords no reason why it should not be made or could not be made a party defendant.   Until the corporate entity was actually extinguished in the manner pointed out by law, it is still a living thing; inactive it is true, but still possessing corporate vitality, and capable of being sued in its corporate name, and of being served

under the provisions of section 1902 of the Civil Code, even though it have no public place of business, or no actual personal representative. Without the corporation being made a party defendant, it can never be adjudged that this plaintiff was its creditor; and unless this fact be judicially ascertained, it can not be decreed that the stockholders, even if guilty of wrong-doing in misappropriating the assets of the corporation, have committed any wrong of which this plaintiff could complain. There can not possibly be a privity between the plaintiff and the stockholders, unless he be a creditor of the corporation whose assets are alleged to have been misappropriated; and inasmuch as the corporation has not been made a party defendant, there is no theory of law upon which the wrongful acts of the defendants in dealing with the corporate property can be made by relation a wrong as to the plaintiff. Corporate assets constitute a trust fund in the same sense in which the property of all individuals is impressed with a trust. The property of each is held first for the benefit of creditors, and is liable to appropriation to the payment of debts of the owner, the residue only, after the payment of the debts, being freed from the trust; but in neither case is the trust one over which courts of equity have any peculiar jurisdiction, or of which, for any peculiar reason, they will take cognizance. If the property of an individual be seized by another, and converted to the use of that other, that individual may have an action to recover the property so converted. The same is true of a corporation; but in neither case can a creditor maintain an action, either to recover the thing converted, or to apply the proceeds to the payment of his alleged debt. If the property of a debtor, whether it be an individual or a corporation, be seized by a third person, or if it be taken and carried away in consequence of a collusive arrangement between the debtor and such third person, creditors of such person would not be authorized to maintain primarily an action for the recovery of it; but after the creditor had reduced his claim to judgment, if he could show that property, upon which his debt was really a proper charge, had been diverted, he might, through a court of equity, bring an

action both against the debtor and the wrong-doer, and thus subject such property to the payment of his debt. In the present case, according to the declaration, the stockholders who received the corporate property took it impressed with a trust in favor of the creditors of the corporation. They were trustees ex maleficio, and are liable to the corporation for the misappropriation of the corporate property, and in their hands the corporate assets may be subjected under the same circumstances as would have justified their judicial appropriation to the payment of a debt of the corporation while they were still in its hands. The corporation is the primary debtor; and when sued to judgment, if it should have no assets out of which the judgment at law could be satisfied, the superior court, in the exercise of its equity powers, has power to decree against the stockholders, who had appropriated to their own use the assets of the corporation, the payment of the debts thus recovered against it, to the extent of the value of the assets thus misappropriated.

*Judgment reversed. All the Justices concurring.*