Rachiele et al., Appellants, *v.* Marsico et al.

Argued March 18, 1931.   Before Frazer, C. J., Walling, Simpson, Kephart, Schaffer and Maxey, JJ.

*C. James Todaro, Joseph A. Rossi, William Watson Smith,* of *Smith, Buchanan, Scott & Gordon, Frank B. Ingersoll* and *William H. Eckert,* for appellant.—The lodge and the corporation in this case should be re-

garded by equity as one and the same: Polish Falcons' Gymnastic & Literary Assn. v. Kubiak, 238 Pa. 464; Kendall v. Klapperthal Co., 202 Pa. 596; S. G. V. Co. v. S. G. V. Co., 264 Pa. 265; Atlas Portland Cement Co. v. Brick & Clay Co., 280 Pa. 449; Stoney Brook Lumber Co. v. Blackman, 286 Pa. 305; Delphia Knitting Mills Co. v. Richards, 62 Pa. Superior Ct. 9; Montgomery Web Co. v. Dienelt, 133 Pa. 585; Revloc Supply Co. v. Troxell, 281 Pa. 424; Love v. Clayton, 287 Pa. 205.

The resolutions of March 19, 1922, and October 28, 1923, are illegal and void: Loyal Orange Institution v. Morrison, 269 Pa. 564; Grand Castle Knights of Golden Eagle v. Taylor, 278 Pa. 9; Carlin v. Hibernians, 54 Pa. Superior Ct. 512; Ioska Tribe of Redmen v. Great Council of Redmen, 98 Pa. Superior Ct. 390.

The corporation holds the legal title in trust for the lodge.

*Oliver K. Eaton* and *John B. Fortunato,* for appellee. —The learned chancellor correctly distinguishes the case at bar from those cited, on the ground "that, in each of the latter, the property had been bought with lodge funds; here the evidence clearly demonstrates an intention to buy with the individual moneys of the members, followed by an actual purchase in accordance with the intention."

Appellants' theory with respect to this alleged error of the court below is predicated upon Polish Falcons', etc., v. Kubiak, 238 Pa. 464. We contend, that the facts in the case just referred to are essentially different from the facts found by the court below, upon ample evidence, in the case at bar.

OPINION BY MR. JUSTICE MAXEY, April 13, 1931:

The question involved in this case is the ownership of a piece of property 125 feet square, situated at Sharpsburg, Pa., and improved in front with a two-story brick building and in the rear with a one-story frame dwell-

ing. It was purchased on October 3, 1922, for $13,500, of which $6,000 was paid in cash and the balance secured by a purchase-money mortgage. Since the real estate was purchased it has been used for social purposes by the individual members of Lodge Balda Giovinezza Italica No. 586, Order Sons of Italy in America (hereinafter referred to as the lodge) and as a place of meeting for the lodge. The title to the real estate was taken in the name of three individuals of this lodge as trustees, but without designation of the beneficiary.

The chancellor made twenty findings of fact. The substance of the most material of these findings is as follows: The members of this lodge wished to acquire a hall for social activities for themselves and their children as well as a meeting place for the lodge. At a meeting of the lodge held March 19, 1922, it was agreed that such a property should be purchased, not with money of the lodge but with special contributions from individual members; that the purchase should be made by and under an equity to be incorporated under the laws of Pennsylvania; that in order to effect such purchase a building fund should be established by special contributions from individual members, present and prospective, and contributors should thereupon become members of the corporation. It was expressly determined that the Order Sons of Italy in America and any organization over which it had control should have no interest in the property, or right of usage or possession under any circumstances. The aforesaid action is recorded in the minutes of the meeting of the above date. During the year 1922, $4,770 were received from 193 individual contributors. Many lodge members made no contributions. On October 3, 1922, the real estate above described was purchased for the sum stated, $13,500. Because the proposed corporation had not yet been chartered, the title to the real estate was taken in the names of three individuals, as trustees, without designation of beneficiary. With the exception of $300, hand money,

no part of the purchase price came from the funds of the lodge, but it was derived solely from individual contributions from members and proceeds of outside activities in behalf of the building fund. The $300 hand money was subsequently repaid to the lodge out of the contributions of the individual members to the building fund. On March 3, 1923, the Mutual Beneficial Society Balda Giovinezza Italica was chartered as a corporation of the first class, for the purpose of maintaining a society for beneficial and protective purposes, and on March 26, 1923, the individual trustees conveyed the real estate to this corporation and the title is still retained by it. On October 28, 1923, the members of the lodge, in order to dispel any doubt as to the ownership of the property and to satisfy those who had agreed to contribute but had not done so, unanimously denied and declared that the real estate in question did not belong to Lodge Regina Elena No. 586, but to the corporation, Mutual Beneficial Society Balda Giovinezza Italica; that the members of the latter corporation were those who contributed to the building fund, not as members of the Order Sons of Italy in America, but separately on their personal account; that in case of dispute, the property should by right be transferred to the members of the Mutual Beneficial Society Balda Giovinezza Italica, without any claim of the Order Sons of Italy in America; that in order to save expense, the corporation should not have any administration, the administration elected by the lodge, assisted by a house committee, being sufficient; and that the building fund did not belong to the lodge but to the Beneficial Society, even if the funds were disbursed under the signatures of the officers of the lodge and the accounts kept in the name of the lodge. All this was set forth in the minutes of the meeting of October 28, 1923. The court further found that since the aforesaid real estate was acquired it has been used for social purposes by the individual lodge members and as a place for meet-

ings of the lodge, the corporation making no charge to the lodge. On September 15, 1929, a dissension arose in the lodge and a majority of the members withdrew therefrom. About 101 out of a total membership of 278 remained. The individual defendants were among those who withdrew. Those who withdrew claim they are still members of the Mutual Beneficial Society Balda Giovinezza Italica and that the corporation is the sole owner of the real estate.

Plaintiffs averred in their bill that the real estate was the property of the lodge and that the Mutual Beneficial Society Balda Giovinezza Italica held the legal title to the real estate in trust for the members of the lodge, and they prayed for a decree to that effect.

The findings of fact found by the chancellor and affirmed by the court in banc in dismissing the bill were all supported by sufficient competent evidence, and it is settled that such findings will not be disturbed on appeal in the absence of clear error: Donaldson et al. v. Andresen, 300 Pa. 312. Findings of fact by a chancellor have the effect of a verdict of a jury, and will not be disturbed on appeal where there is evidence to support them: Atlas Portland Cement Co. v. American Brick & Clay Co., 280 Pa. 449.

Appellants chiefly rely upon Polish Assn. et al. v. Kubiak, 238 Pa. 464. That case is clearly distinguishable from the case before us. In that case the secessionists from a lodge (which lodge was called "nest") attempted to carry out of the lodge or "nest" with them property the title to which was taken in the name of the corporation legally distinct from the nest, but which property had been paid for by the nest. The court below in that case found as a fact that "The Polish Falcons' Gymnastic and Literary Association of Pittsburgh is but another name for Polish Falcons' Adam Mickiewicz Nest No. 8, and there are not, and it was never intended there should be, two separate organizations." In the case before us the court found as a fact that the prop-

erty in controversy was not paid for by lodge funds and further that it was the distinct intention that there should be two separate organizations, one a corporation in which title to the said property should be vested, free and clear from any interest or claim on the part of the Order Sons of Italy in America or any other organization over which it exercised control. For these reasons the Polish Falcons' Case does not, as appellants contend, "furnish the guide for the determination of the case at bar."

The above case of Atlas Portland Cement Co. v. American Brick & Clay Co., and the cases of Stony Brook Lumber Co. v. Blackman, 286 Pa. 305, and S. G. V. Co. v. S. G. V. Co., 264 Pa. 265, all of which cases are cited by the appellants, differ so widely in their facts from the case before us as to make them no authority for the appellants in this case.

Appellants argue that the resolutions passed by the lodge on March 19, 1922, and October 28, 1923, referred to in the findings of fact of the chancellor, provide for a disposition of what is really lodge property different from that provided by the constitution and by-laws of the order. They say: "Those resolutions place the property at the will of the majority. The constitution and by-laws of the order, however, provide that as long as seven members of a lodge desire to remain affiliated with the order, the lodge continues to exist, and any who insist upon seceding simply resign individually and lose all of their rights in the property and privileges of the lodge; and that in case of dissolution of a lodge 'the funds in the treasury and the real estate' shall be delivered to the Grand or Supreme Council to 'be administered for the benefit of the said lodge and returned in case that the lodge is reinstated or reorganized,' and if not reinstated or reorganized then to go 'to the benefit of the orphanage' of the order." The fundamental errors in this reasoning are these: The first error is one of fact. It assumes that the property in question was

lodge property, whereas in fact the property in question was not purchased with lodge funds or by the lodge, but was purchased by certain individual members of the lodge and with funds raised from individual contributions and from entertainments. The second error is one of law. It assumes that the constitution and by-laws of the order are paramount to the laws of Pennsylvania in regulating the acquisition and control of property. This court held in Krauczunas v. Hoban, 221 Pa. 213, that ecclesiastical rules and regulations, except as they are aided by legal conveyance, are ineffectual to divest any owner of his property; and in Mazaika v. Krauczunas, 233 Pa. 138, that in a case involving the right of property the rules and regulations of the general ecclesiastical system must give way to the laws of this Commonwealth. While these cases refer to property used for ecclesiastical purposes, we think the same logic applies to property being used for lodge purposes. If, for example, in the case before us, some wealthy member of the lodge had purchased the property in question with his own funds and held title in his own name and had given the lodge free use of the property during the intervening years since he purchased it, how could it be contended upon his withdrawal or expulsion from the lodge that this individual member did not still retain his ownership of this property? The same principle applies whether the ownership of the property is acquired by one member or by a hundred members of a lodge. The court below found as a fact, upon sufficient competent evidence, that the property in question was not acquired by the lodge; it was not paid for with the lodge funds; that the property, both legally and beneficially, belonged not to the lodge but to the distinct legal entity in whose name the title has been vested since March 26, 1923. If the property had been purchased by lodge funds or if the contributors to the building fund had stipulated that the property purchased should be the property of

the lodge, appellants would be entitled to the decree sought, but the facts in this case are otherwise.

Appellants contend that the facts that this corporation has been "wholly dormant, has not elected any officers, had never asked new nembers of the lodge if they wished to become members of the corporation," are of great significance and break down the obvious distinction between this case and the case of Polish Assn. et al. v. Kubiak et al., supra, where the property was purchased by lodge funds and there was no intent to have two separate organizations. We cannot understand how the dormancy, or even the dissolution, of the corporation holding title to this property would ipso facto vest this property in persons who are not stockholders of the corporation and whose only claim to the property is eight years free user of it. The corporation was not dissolved, it was only inactive. Want of officers by reason of the failure to elect does not in itself work a dissolution of a corporation or operate as a surrender of its corporate franchises. A dormant corporation possesses a vitality which at any time may galvanize it into action. This court held in Lehigh Bridge Co. v. Lehigh Coal & Navigation Co., 4 Rawle 377, that a forfeiture of the charter of a corporation for abuse or neglect of its franchise, must be declared by process and judgment of law, before the corporation can be treated as defunct: and we held in Com. ex rel. Claghorn et al. v. Cullen, 13 Pa. 133, that a corporation does not become defunct from a simple neglect to elect officers, whilst the capacity to elect remains in the members.

"A corporation aggregate may at common law be dissolved by the death of all its members; but this mode of dissolution cannot apply to business corporations. The shares, being property, pass by assignment, bequest or descent, and must ever remain the property of some persons, who of necessity must be members of the corporation so long as it may exist": 7 Ruling Case Law, 706, section 710.

If the individual lodge members who acquired the property in dispute for lodge purposes and vested its title in a corporation, violated the constitution and by-laws of the lodge in doing so, they could have had visited upon them the pains and penalties of expulsion, but the corporation they organized cannot be divested of the property which it holds by virtue of the laws of Pennsylvania and which was paid for by contributions of individuals, because its stockholders as members of a lodge violated the rules of that lodge. It is undoubtedly true, as appellants say, that "a resolution adopted by a lodge conflicting with a provision of the constitution or by-laws of the order is void and of no effect," if by "effect" is meant effect on the legal rights of the lodge, but in this case no one is attempting by resolution or otherwise to divest the lodge of any legal right it has or ever had in the property in question. If the resolution referred to is the resolution of October 28, 1923, the further answer is that the title to this property had vested in this corporation seven months and two days previously and this resolution, therefore, has no materiality in this case except as evidence that the lodge by formal action recognized the fact that the real estate did not belong to the lodge but to the corporation. If the resolution of March 19, 1922, is referred to, the further answer is that it has no effect upon the title to the property, but has evidentiary value as showing that it was the intent of the lodge and the members thereof that a property to be used by the lodge should not be purchased with money of the lodge but with contributions from individual members and that the title should be held by a legal entity distinct from the lodge and its members. If the lodge had not seen fit to use the property thus acquired and thus held, it could have declined to do so; it is clear, however, that by the free use of this property it acquired no legal or equitable title to it.

The decree of the court below dismissing the bill is affirmed, at the costs of the appellants.