ALLEGHENY BROADCASTING CORPORATION, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18513. Promulgated April 4, 1949.

*L. W. Eckels, Esq.*, for the petitioner.
*Stanley L. Drexler, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: The Commissioner determined deficiencies in the excess profits tax of KQV Broadcasting Co., transferor of $1,236.81 for the calendar year 1944 and $32,421.17 for the period January 1 to February 28, 1945.   In a statement attached to the deficiency notice the Commissioner stated, among other things, as follows:

The records of this office indicate that the assets of KQV Broadcasting Company * * * were transferred to you on or about February 28, 1945.

The above-mentioned amounts represent your liability as a transferee of assets of the KQV Broadcasting Company * * * for deficiencies of income and excess profits tax due from the KQV Broadcasting Company for the taxable year ended December 31, 1944 and for the period January 1, 1945 to February 28, 1945.

The petitioner assigns no error as to the deficiency for the year 1944. The petitioner assigns error as to respondent's determination for 1945, as follows:

(a) Respondent erred in determining that the taxable year of KQV Broadcasting Company, a Pennsylvania corporation now dissolved, was the period from January 1, 1945 to February 28, 1945, rather than the calendar year 1945.

(b) Respondent erred in determining that the excess profits tax of KQV Broadcasting Company for the taxable year ended December 31, 1945 should be computed by annualizing the income for the period from January 1, 1945, to February 28, 1945.

Petitioner concedes that it is liable as transferee for any deficiencies in the excess profits tax liability of KQV which may be determined by the decision of this Court.

The facts have been stipulated and are adopted as our findings of fact.   They may be summarized as follows:

Petitioner Allegheny Broadcasting Corporation is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and has its principal office in Pittsburgh, Pennsylvania.

The KQV Broadcasting Co. (hereinafter called KQV) was a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is now dissolved.   For several years prior to February 28, 1945, KQV owned and operated a radio broadcasting station in Pittsburgh having call letters KQV and known as Radio Station KQV.

KQV's Federal income, declared value excess profits, and excess profits tax returns for the taxable year 1945 were filed with the collector of internal revenue for the twenty-third collection district of Pennsylvania, at Pittsburgh, Pennsylvania, on March 8, 1946.   In those returns KQV reported United States corporation income tax liability for the taxable year 1945 in the amount of $18,526.43, excess profits tax liability in the amount of $2,373.40, and no liability for declared value excess profits tax.   The taxes so reported were paid to the collector

within the time prescribed by law. Substantially all of the deficiency in excess profits tax which respondent has determined for 1945 resulted from the fact that he determined that KQV was taxable as a corporation only for the period from January 1 to February 28, 1945, rather than for the entire calendar year 1945 and that the excess profits net income of KQV accrued during the period of two months should be annualized and the excess profits tax thereon computed under section 711 (a) (3) (A) of the Internal Revenue Code and section 35.711 (a)–4 of Regulations 112. Other adjustments made by respondent in the notice of deficiency are not in dispute.

In November 1944 petitioner, with the permission of the Federal Communications Commission (hereinafter referred to as the FCC) acquired all of the issued and outstanding capital stock of KQV. Immediately upon such acquisition the directors of petitioner, desiring to avoid unnecessary expenses of operation of Radio Station KQV through a wholly owned subsidiary corporation, determined to apply to FCC for permission to acquire direct ownership of Radio Station KQV, and in the latter part of November 1944 application for such permission was filed with the FCC. On December 19, 1944, the secretary-treasurer of KQV, anticipating that such permission would shortly be granted, that petitioner would then be in a position to effect a complete liquidation of KQV, and that KQV should then be formally dissolved under the Pennsylvania corporation law, requested, in writing, issuance of clearance certificates by the Departments of State, Revenue, and Labor & Industry of the Commonwealth of Pennsylvania, such certificates (showing that KQV was not indebted to the commonwealth) being required to be filed with the dissolution papers before dissolution would be permitted by the Department of State of the Commonwealth of Pennsylvania. In January 1945 the Department of Labor & Industry wrote to counsel for KQV acknowledging receipt of the written request for clearance certificate and advising that an audit of KQV's account, which would require a month to six weeks, would be necessary before a clearance certificate could be issued. No action was taken by the Department of Revenue in response to the request.

On February 27, 1945, FCC granted permission for transfer of the operating license and assets of Radio Station KQV from KQV to petitioner and on February 28, 1945, the transfer was effected. All the assets of KQV were transferred to petitioner and petitioner assumed all of its liabilities.

On April 30, 1945, upon being advised by a representative of the Department of Labor & Industry who had conducted an audit of the unemployment compensation tax liability of KQV that KQV owed $700 in unemployment compensation taxes for prior years and interest

and penalties thereon aproximating $237, KQV's secretary-treasurer submitted an offer to compromise the liability for interest and penalties at approximately 50 per cent of the face amount thereof. No action was taken by any of the Departments of the Commonwealth of Pennsylvania for several months thereafter and on December 1, 1945, the secretary-treasurer of KQV, in order to bring the matter to a head, again made written request for the issuance of clearance certificates. On December 4, 1945, the Department of Revenue wrote to counsel for KQV, advising that KQV's final corporation reports were being forwarded to the department's taxing unit for settlement and that, upon completion of the settlement and payment of any tax found to be due, the department would be in a position to issue a clearance certificate. On December 14, 1945, the Department of Labor & Industry wrote counsel for KQV acknowledging the request of December 1, 1945, for a clearance certificate and advising that issuance of such certificate was not in order because of the pendency of the offer in compromise, which had not received final action. On January 24, 1946, written inquiry was again made on behalf of KQV as to the status of the requests for clearance certificates from the Departments of Revenue and Labor & Industry. On January 25, 1946, the Department of Labor & Industry issued its clearance certificate to KQV and on January 30, 1946, the Department of Revenue advised that it had issued its clearance certificate on January 21, 1946, and had sent the certificate to petitioner.

On February 8, 1946, KQV filed with the Department of State of the Commonwealth of Pennsylvania its articles of dissolution and on the same date they were approved by the department and the department issued to KQV a certificate of dissolution.

In 1946 KQV filed an application for relief under section 722 of the Internal Revenue Code with respect to the taxable (calendar) year 1945. At the time of the hearing of this proceeding this application for relief had not been acted upon by the Bureau of Internal Revenue. Any recovery thereunder, if any, will inure to the benefit of petitioner, which became entitled to all of the assets of KQV by transfer on February 28, 1945.

KQV was in existence throughout the entire calendar year 1945 and was not dissolved until after December 31, 1945.

There is but one issue to decide in this proceeding, and that is whether it was proper for the respondent to treat the 1945 excess profits tax return of the KQV Broadcasting Co., petitioner's transferor, as a return for a "short taxable year" covering the period from January 1 to February 28, 1945, and determine its excess profits tax liability for that period under section 711 (a) (3) (A) of the Internal Revenue Code. The pertinent part of section 711 (a) (3) (A) is printed in the

margin.[1]  The regulation applicable to the enforcement of section 711 (a) (3) (A) is section 35.711 (a)–4 of Regulations 112, as amended by T. D. 5388, approved July 7, 1944.[2]

In *United States* v. *Kingman,* 170 Fed. (2d) 408, the court, after a discussion of the provisions of section 35.711 (a)–4 of the regulations, to which we have above referred, said:

   \* \* \* It is too plain for discussion that a corporation's taxable year covers twelve months if it remains in existence, and that it does not under this regulation go out of existence unless it ceases business, dissolves and retains no valuable claims on which it may sue after dissolution. \* \* \*

Petitioner concedes that KQV ceased business after petitioner took over all of its assets February 28, 1945, but strongly contends that its existence did not cease at that time and that, on the contrary, it remained in existence throughout the year 1945, engaged in winding up certain necessary matters before it could be legally dissolved under the laws of the Commonwealth of Pennsylvania.  Petitioner contends that, under such facts as we have in the instant case, the regulation which we have printed in the margin and which was discussed by the court in the *Kingman* case, *supra,* itself shows that section 711 (a) (3) (A) of the code has no application.  Petitioner relies strongly on *United States* v. *Kingman, supra.*  We think that case clearly supports petitioner.  It is plain that KQV was not dissolved in 1945, nor could it have been dissolved under the laws of the Commonwealth

---

[1] SEC. 711. EXCESS PROFITS NET INCOME.
  (a) \* \* \*

   \*      \*      \*      \*      \*      \*      \*

  (3) TAXABLE YEAR LESS THAN TWELVE MONTHS.—

  (A) General Rule.—If the taxable year is a period of less than twelve months the excess profits net income for such taxable year (referred to in this paragraph as the "short taxable year") shall be placed on an annual basis by multiplying the amount thereof by the number of days in the twelve months ending with the close of the short taxable year and dividing by the number of days in the short taxable year.  The tax shall be such part of the tax computed on such annual basis as the number of days in the short taxable year is of the number of days in the twelve months ending with the close of the short taxable year.

[2] TAX FOR PERIOD OF LESS THAN 12 MONTHS.—(a) *Methods of computing tax for short taxable year; allowance.*—Section 711 (a) (3) provides rules, under a general rule and under an exception to such rule, which are applicable to short excess profits tax taxable years for the purpose of determining 12 months' experience and computing the tax for such years.  A short taxable year is any taxable period of less than 12 months.  If the period from the date of incorporation of a corporation to the end of its first accounting period, or the period from the beginning of its last accounting period to the date it ceases operations and is *dissolved,* retaining no assets, is a period of less than 12 months, such period is a short taxable year.  In every case of a short taxable year, whether of a type resulting from a change of accounting period or of a type described in the preceding sentence, the excess profits net income for a period of 12 months used for the purpose of computing the tax under this section shall be used for all other purposes under this subchapter (except as otherwise expressly provided) as the excess profits net income of the taxpayer for the short taxable year.  The tax imposed by section 710 (a) (1) (A) for the short taxable year shall be computed under subsection (b) of this section, except as otherwise provided in subsection (c) of this section.  The tax under section 710 (a) (1) (B) for a taxable year of less than 12 months is determined on the basis of the actual normal tax and surtax for the taxable year, and on the basis of the corporation surtax net income for such year computed for the period for which the return was made without placing the net income on an annual basis and with the proper adjustments under that section with respect to such year. [Italics supplied.]

of Pennsylvania. There were certain clearances as to its tax liabilities which it had to have from the state authorities before it could legally dissolve. These, although there was no lack of diligence on its part, it did not receive until in 1946. Soon after it did receive them, to wit, February 8, 1946, KQV dissolved and ceased to exist, except for certain limited purposes which the statutes of the Commonwealth of Pennsylvania grant to dissolved corporations for the purpose of winding up their affairs, such as the prosecution of claims, suing and being sued, etc.

Only recently, in *Union Bus Terminal, Inc.*, 12 T. C. 197, we followed *United States* v. *Kingman, supra,* and held that the taxpayer in that case did not dissolve during the taxable year, and hence was not required to place its excess profits net income on an annual basis as required by section 711 (a) (3) of the code. That case was decided after briefs in the instant case were filed. While there are some differences in the facts of the instant case from those which were present in *Union Bus Terminal, Inc.*, we do not think those differences are sufficient to distinguish the two cases. The important fact in the *Union Bus Terminal, Inc.*, case was that for adequate reasons, to wit, because it continued to hold certain properties which were not distributed to its sole stockholder in the year 1943 when it ceased business, it was not legally dissolved until after that year. The important fact in the instant case is that for adequate reasons KQV was not dissolved in 1945 when it ceased business. The reasons why it was not dissolved in 1945 are fully stated in the facts recited above and, while those reasons are different from those present in *Union Bus Terminal, Inc., supra,* we think they are just as adequate and that the two cases are, therefore, not distinguishable.

The cases relied upon by respondent in his brief in the instant case are in the main the same as those we distinguished in the *Union Bus Terminal, Inc.*, case, namely, *Kamin Chevrolet Co.*, 3 T. C. 1076; *Pepsi Cola Co.* v. *Commissioner*, 155 Fed. (2d) 921; and *Economy Savings & Loan Co.* v. *Commissioner*, 158 Fed. (2d) 472. For the same reasons that we distinguished those cases in *Union Bus Terminal, Inc., supra,* we distinguish them here. It is unnecessary to repeat those reasons.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

HILL, *J.*, dissenting: All the facts in this proceeding were stipulated and, as stipulated, constitute the findings of fact herein. I shall recite sufficient of such facts to point the basis of my disagreement with the conclusion reached herein by the majority.

The petitioner held all of the issued and outstanding stock of KQV Broadcasting Co. The latter company owned and operated a radio broadcasting station in Pittsburgh, Pennsylvania. On February 28, 1945, by an instrument in writing executed by and between KQV Broadcasting Co., as grantor, and petitioner herein, as grantee, all of the "assets, and properties of every kind and description wheresoever situated of the grantor," including "Any and all radio broadcasting licenses issued by Federal Communications Commission to the grantor, together with all the rights and privileges of the grantor thereunder and including any extensions or renewals thereof," were "sold, assigned, transferred, conveyed and delivered" to the grantee, the petitioner herein. The conveyance specifically included all intangible, as well as tangible assets, and "All moneys to be realized on account of any right of the Grantor to any refund on account of taxes paid." The petitioner, in consideration of the conveyance above indicated, assumed all of the liabilities of KQV and simultaneously with the execution of the agreement surrendered to KQV all of the capital stock of the latter for cancellation.

As a result of the transactions evidenced by the agreement in question, KQV ceased all operations on February 28, 1945, and thereafter had no capital stock, no capital, no assets, no liabilities, and, consequently, no income and no expense. KQV was on that date, in accordance with the terms of the agreement, completely liquidated and it surrendered all its rights, privileges and powers to operate or carry on a business.

The agreement of February 28, 1945, was entered into pursuant to written consent of petitioner and an appropriate resolution of KQV's board of directors, and it is stipulated that "KQV transferred all of its assets to petitioner in complete cancellation and redemption of all of the issued and outstanding capital stock of KQV." It is also stipulated that the Federal Communications Commission authorized the transfer of the operating license of radio station KQV to petitioner and that "on February 28, 1945 the transfer was effected through a complete liquidation of KQV Broadcasting Company, all of its assets being transferred and conveyed to Allegheny Broadcasting Corporation [petitioner] in complete cancellation and redemption of all of the issued and outstanding capital stock of KQV Broadcasting Company, all such stock being owned by Allegheny Broadcasting Corporation."

The agreement of February 28, 1945, above referred to recites:

WHEREAS, the Grantee [petitioner], being the sole shareholder of the Grantor, has executed in writing a consent to the dissolution of the Grantor * * *; and

WHEREAS, the Grantor desires to transfer and convey to the Grantee all of its property, assets, franchises, licenses, rights, privileges and good will in

complete liquidation and cancellation of all of the outstanding stock of the Grantor; and

WHEREAS, the Grantee desires to accept such transfer and conveyance in complete liquidation and cancellation of all of the issued and outstanding stock of the Grantor and to assume and agree to pay all of the obligations and liabilities of the Grantor;

Now, THEREFORE, this instrument witnesseth, that in consideration of the premises and of the delivery by the Grantee to the Grantor for cancellation of all the issued and outstanding stock of the Grantor, * * * and the assumption by the Grantee of all obligations and liabilities of the Grantor, the Grantor by these presents does assign, transfer, convey and deliver to the Grantee, etc.

The facts above set forth, having been stipulated, are included as the findings of fact in the majority report by reference to, and adoption of, the stipulations of fact, but are not all specifically set forth in the report.

The majority report sets forth the following findings of fact:

On February 27, 1945, FCC granted permission for transfer of the operating license and assets of Radio Station KQV to petitioner and on February 28, 1945, the transfer was effected. All the assets of KQV were transferred to petitioner and petitioner assumed all of its liabilities.

In view of the facts stipulated and found, the conclusion is unavoidable that KQV was completely liquidated on February 28, 1945, and it was so understood by the parties hereto. The petitioner in its brief requested that the following findings of fact be made:

On February 27, 1945 the FCC granted permission for transfer of the operating license and assets of Radio Station KQV from KQV to petitioner and on February 28, 1945 such transfer was effected in a complete liquidation of KQV.

A similar request was made by respondent in his brief.

It appears to me that the facts point inescapably to the conclusion that KQV was dissolved *de facto* on February 28, 1945. As I understand it, the majority holding to the contrary is based solely on the fact that KQV's charter was not, and could not be, canceled in the year 1945 and that, since there could be no dissolution *de jure* of KQV in that year, there could be no dissolution *de facto*. The majority assumes the premise that there can be no dissolution *de facto* of a corporation prior to the time when a dissolution *de jure* may be effected. Such premise must be based on the erroneous theory that a corporation is created by an official issuance and registration of a certificate of incorporation, whereas, such certificate is merely the official recognition of a corporation created by its incorporators and an authorization to operate as such within the scope of its charter. Whether or not a corporation shall continue to exist as such is a matter wholly within the power of its stockholders and board of directors. When, as here, the

stockholders and board of directors have taken action to put an end to the corporation and the functions for which it was created, there is nothing to which the authorization of the certificate of incorporation can apply. Such corporation is dead and dissolved in fact, whether or not the certificate of incorporation has been canceled.

*Kamin Chevrolet Co.*, 3 T. C. 1076, presented a state of facts parallel to the facts here. Our holding in that case was contrary to the holding of the majority here. The majority attempts to distinguish the *Kamin* case, but clearly that can not be done. In that case we said:

The entire contention of the petitioner in this case rests upon the tenuous ground that it did not surrender its charter at the time that it was completely liquidated on June 30, 1940. It claims that since under the laws of the Commonwealth of Pennsylvania it had a legal existence throughout the calendar year 1940, its return correctly covered the entire calendar year. It therefore argues that the respondent was in error in determining its excess profits net income for the year 1940 in accordance with the provisions of section 711 (a) (3) (A) of the Internal Revenue Code.

It may be conceded that technically the petitioner had a legal existence for the entire calendar year 1940. Under the laws of the Commonwealth of Pennsylvania a corporation's charter is not canceled by a complete liquidation of the corporation. Some action must be taken either by the corporate officers or by the proper state authorities for the cancellation of the charter before the corporate existence ceases.

It does not follow from this that a corporation may not be dissolved for the purpose of the income and excess profits tax prior to the date that its charter is canceled. There may be a *de facto* dissolution even though there is no *de jure* dissolution. There can be no doubt that upon the stipulated facts there was a *de facto* dissolution of the petitioner corporation on June 30, 1940. Thereafter the corporation had no capital, no income, and no expenses. It was a mere empty shell.

This Court then concluded: "Consequently, we think, the income of a corporation which has completely liquidated during a taxable year must be placed on an annual basis."

I submit that the instant case falls squarely within the factual pattern of the *Kamin* case. Believing that the *Kamin* case was correctly decided, I can not agree with the conclusion of the majority here. I think, also, that in principle the instant case is not distinguishable from *Pepsi Cola Co.* v. *Commissioner*, 155 Fed. (2d) 921. My conclusion herein that there was a *de facto* dissolution of KQV on February 28, 1945, is likewise supported by *Wier Long Leaf Lumber Co.* v. *Commissioner*, 173 Fed. (2d) 549. Certainly, the instant case is distinguishable on its facts from both the *Kingman* and the *Union Bus Terminal* cases cited in the majority report and relied upon as supporting the conclusion reached therein. In neither of the latter cases was there a complete liquidation at the time the taxpayers ceased operations or within the taxable year involved.

TURNER, DISNEY, and LEMIRE, *JJ.*, agree with this dissent.