## COMMISSIONER OF INTERNAL REVENUE v. ALLEGHENY BROADCASTING CORP.

### No. 10043

United States Court of Appeals
Third Circuit

Argued Dec. 22, 1949.

Decided Feb. 10, 1950.

Irving A. Axelrod, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Edward J. P. Zimmerman, Sp. Assts. to the Atty. Gen., on the brief), for petitioner.

Lee W. Eckels, Pittsburgh, Pa. (John E. Laughlin, Jr., Thorp, Bostwick, Reed & Armstrong, Pittsburgh, Pa., on the brief), for respondent.

Before MARIS, GOODRICH and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

The sole question for decision is whether the Tax Court erred in holding that the income received by KQV Broadcasting Company, respondent's assignor, between January 1, 1945 and February 28, 1945 was not required to be annualized for excess profits tax purposes by Section 711(a) (3) (A) of the Internal Revenue Code, 26 U.S.C.A. § 711(a) (3) (A). The facts are not in dispute and may be stated briefly.

In November, 1944 the respondent taxpayer, with permission of the Federal Communications Commission, acquired all the stock of KQV Broadcasting Company, a Pennsylvania corporation, which owned and operated radio station KQV in Pittsburgh, Pennsylvania. On December 19, 1944 KQV, anticipating that the Commission would accede to an additional request that the taxpayer had made to be permitted to acquire direct ownership of the radio station, and looking toward dissolution under Pennsylvania law, requested of the appropriate Pennsylvania departments the issuance of the clearance certificates required to be filed before dissolution could be accomplished under Pennsylvania law.

On February 28, 1945, pursuant to permission granted by the Commission on the previous day, the operating license and assets of KQV were transferred to the taxpayer which thereupon assumed the liabilities of KQV. Thereafter KQV ceased to do business. The last of the necessary clearance certificates was not issued until January 25, 1946, and on February 8, 1946, they were filed in the Pennsylvania Department of State by KQV together with its articles of dissolution. On the same day the Department issued to KQV a certificate of dissolution. Additional facts appear in the opinion filed by Judge Black for the Tax Court in banc, 12 T.C. 552. It is sufficient here merely to add that the Court found that "for adequate reasons KQV was not dissolved in 1945 when it ceased business." The Tax Court in banc, four judges dissenting, held that KQV was not required to file a return for a "short taxable year" consisting of the period January 1 to February 28, 1945 or to annualize for excess profits tax purposes the income received during that period. The Commissioner of Internal Revenue has brought the case here for review.

The Commissioner's contention is that Section 711(a) (3) (A) of the Internal Revenue Code requires the annualization of the two months income which KQV received during the time it was doing business in 1945. However, we agree with the view expressed by the Court of Appeals

for the Fifth Circuit in United States **v.** Kingman, 1948, 170 F.2d 408, that under the circumstances of this case, which are essentially the same as those present in that case, such annualization is not required by the Internal Revenue Code or the regulations thereunder.

Section 711(a) (3) (A), as amended by section 213 of the Revenue Act of 1942, is as follows:

"§ 711 Excess profits net income

(a) * * *

(3) Taxable year less than twelve months

(A) General rule. If the taxable year is a period of less than twelve months the excess profits net income for such taxable year (referred to in this paragraph as the 'short taxable year') shall be placed on an annual basis by multiplying the amount thereof by the number of days in the twelve months ending with the close of the short taxable year and dividing by the number of days in the short taxable year. The tax shall be such part of the tax computed on such annual basis as the number of days in the short taxable year is of the number of days in the twelve months ending with the close of the short taxable year."

It will be seen that the application of this subsection depends upon whether "the taxable year is a period of less than twelve months." Subchapter E, Excess Profits Tax, of Chapter 2, Additional Income Taxes, of the Internal Revenue Code, in which Section 711 appears, contains no definition of this term. It does, however, contain in Section 728 a provision that "The terms used in this subchapter shall have the same meaning as when used in Chapter 1." Thus directed to Chapter 1 we find in Section 48 (a) of that chapter the following definition of the term "taxable year": "(a) Taxable year. 'Taxable year' means the

calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under this Part. 'Taxable year' means, in the case of a return made for a fractional part of a year under the provisions of this chapter or under regulations prescribed by the Commissioner with the approval of the Secretary, the period for which such return is made." 26 U.S.C.A. § 48.

It thus appears that the determination of the question whether the taxable year of a taxpayer is less than twelve months depends upon whether the taxpayer is required by the law or regulations to make a return for a fractional part of a year. Section 47 deals with "Returns for a period of less than twelve months." The only provision of that section which is relevant to our problem is subsection (g) which was added to Section 47 by Section 135(c) of the Revenue Act of 1942. That subsection is as follows: "(g) Returns where taxpayer not in existence for twelve months. In the case of a taxpayer not in existence during the whole of an annual accounting period ending on the last day of a month, or, if the taxpayer has no such annual accounting period or does not keep books, during the whole of a calendar year, the return shall be made for the fractional part of the year during which the taxpayer was in existence." 26 U.S.C.A. § 47.

■ It will be observed that this provision is applicable only to those taxpayers who were "not in existence during the whole of an annual accounting period * * * or * * * calendar year." Thus the test of the statute is whether the taxpayer was "in existence" during the entire year. The existence of a corporation, however, does not terminate until it is legally dissolved in accordance with the law of its creation.[1] For even if it has

1. Mumma v. Potomac Company, 1834, 8 Pet. 281, 33 U.S. 281, 287, 8 L.Ed. 945; Boston Glass Manufactory v. Langdon, 1834, 24 Pick 49, 41 Mass. 49, 53, 35 Am.Dec. 292; Taylor v. Holmes, C.C.W.D.N.C. 1882, 14 F. 498, 506, affirmed 127 U.S. 489, 8 S.Ct. 1192, 32 L.Ed. 179; Lamar v. Allison, 1897, 101 Ga. 270, 28 S.E. 686, 688; Brock v. Poor, 1915, 216 N.Y. 387, 111 N.E. 229, 234; First Nat. Bank of Greeley, Colo. v. United States, D.C.D.Colo., 1934, 9 F. Supp. 28, 29, affirmed, 10 Cir., 86 F.2d 938; Inasmuch Gospel Mission v. Mercantile Trust Co. Etc., 1945, 184 Md. 231, 40 A.2d 506, 509; Fletcher Cyc. Corporations, vol. 16, §§ 7999, 8013.

disposed of its property and ceased operations it may have until formal legal dissolution the capacity to contract, to acquire new property and to resume the exercise of its corporate franchises.[2] Accordingly the language of Section 47(g) plainly does not require a corporation to file a return for a fractional part of a year unless it was either initially incorporated or legally dissolved during the year.[3] That this language carries out the Congressional intent appears from the reports of the Congressional committees which proposed and approved it and which in identical language stated:[4] "In the case of a corporate taxpayer, the corporation is not in existence after it ceases business *and dissolves,* retaining no assets, whether or not under State law it may thereafter be treated as continuing as a corporation for certain limited purposes connected with the winding up of its affairs, such as for the purpose of suing and being sued." [Emphasis supplied]

This was recognized by the Commissioner in his regulation implementing Section 711(a) (3) (A), the statutory provision with which we are here concerned. For in Sec. 35.711(a)-4(a) of Regulation 112 he provided: "A short taxable year is any taxable period of less than 12 months. If the period from the date of incorporation of a corporation to the end of its first accounting period, or the period from the beginning of its last accounting period to the date it ceases operation *and is dissolved,* returning no assets, is a period of less than 12 months, such period is a short taxable year." [Emphasis supplied]

■ Applying the statutory test to KQV the Tax Court was clearly right in holding that it remained in existence during the whole of the year 1945. For the rule prevails in Pennsylvania as elsewhere that a corporation's existence is not terminated by its disposal of all its property and its entry into a period of inactivity,[5] but that

2. Lucas v. Swan, 4 Cir., 1933, 67 F.2d 106, at page 109, in which Judge Parker said: "So far as the evidence shows, the corporation had not been dissolved or its charter surrendered. It had the power, therefore, whether it had assets or not, to enter into contracts. It was a real person within contemplation of law, and not a fictitious person, or person not having capacity to contract, as was necessary to come within the provisions of section 115, subd. 1, of the Negotiable Instruments Law (Code W.Va.1931, 46-7-27, subd. (a). It is well settled that a corporation does not cease to exist because it has become insolvent or has lost its property and ceased to carry on the business for which it was chartered."

Rachiele v. Marsico, 1931, 303 Pa. 372, at page 380, 154 A. 698, at page 700 in which Justice Maxey said: "The corporation was not dissolved, it was only inactive. Want of officers by reason of the failure to elect does not in itself work a dissolution of a corporation or operate as a surrender of its corporate franchises. A dormant corporation possesses a vitality which at any time may galvanize it into action."

See also Levin v. Pittsburgh United Corporation, 1938, 330 Pa. 457, 199 A. 332.

3. Sec. 47(c) (2) contains the following provision: "If the taxpayer (other than a corporation) was not in existence at the end of the twelve-month period, or *if the taxpayer is a corporation and has disposed of substantially all its assets prior to the end of such twelve-month period,* then in lieu of the net income for such twelve-month period there shall be used for the purposes of this paragraph the net income for the twelve-month period ending with the last day of the short period." [Emphasis supplied]

It will be seen from this provision which was enacted at the same time as Section 47(g) that Congress had in mind the distinction between the case of a corporation which had disposed of its assets without necessarily terminating its corporate existence and one whose corporate existence had been terminated by dissolution.

4. House Report No. 2333, 77th Cong. 1st Sess., p. 90. Senate Report No. 1631, 77th Cong. 2d Sess., pp. 106-107.

5. Koehler v. St. Mary's Brewing Co., 1910, 228 Pa. 648, 77 A. 1016, 139 Am.St.Rep. 1024; Borough of Mt. Union v. Kunz, 1927, 290 Pa. 356, 139 A. 118; Rachiele v. Marsico, 1931, 303 Pa. 372, 380, 154 A. 698; Levin v. Pittsburgh United Corp., 1938, 330 Pa. 457, 199 A. 332.

848

even after an election to dissolve "corporate existence shall continue until a certificate of dissolution has been issued by the Department of State."[6] Only upon the issuance of the certificate of dissolution "the existence of the corporation shall cease."[7]

The Commissioner argues nonetheless that KQV was dissolved de facto when it transferred its assets to the taxpayer on February 28, 1945 and that a dissolution of this sort was sufficient to terminate its existence within the meaning of Section 711(a) (3) (A). We do not so read the statute which, as we have pointed out, does not apply to a corporation whose legal existence continued throughout the year. We do not have here a case in which the corporate existence was continued solely for the purpose of avoiding taxation for the Tax Court has found that the dissolution of KQV was deferred for adequate reasons. Accordingly we are not called upon to consider the case upon the theory that it discloses an attempt to evade the intent of the act.

■ The Commissioner also urges that the construction which we have placed upon the act produces an inequitable result for the government in that if the taxpayer's 1945 income is not annualized its excess profits credit (computed, as it is, from figures of prior years) will be unjustly large and its excess profits tax unjustly small. The answer is that the plain language of the statute and regulations requires this result. It may well be that if this particular problem had been in contemplation Congress would have drawn the statute in different terms. But the fact remains that it did not do so. It is not within our province to supply what Congress has so far not enacted; to do so would be judicial legislation in which we do not propose to indulge even though invited to do so by the Commissioner.

The decision of the Tax Court will be affirmed.

6. Pennsylvania Business Corporation Law, Sec. 1103, 15 P.S.Pa. § 2852—1103.

7. Pennsylvania Business Corporation Law, Sec. 1105, 15 P.S.Pa. § 2852—1105.